Katherine **AANESTAD**, as Special Administratrix to the Estate of Marcy Silverberg, Deceased, Plaintiff,

v.

**AIR CANADA, INC.**, et al., Defendants.

Katherine **AANESTAD**, as Special Administratrix to the Estate of Steven Silverberg, Deceased, Plaintiff,

v.

**AIR CANADA, INC.**, et al., Defendants.

Nos. 71–2227–PH, 71–2228–PH.

United States District Court, C. D. California.

Jan. 24, 1975.

Magana & Cathcart, by Daniel C. Cathcart, Los Angeles, Cal., for plaintiffs.

Chase, Rotchford, Drukker & Bogust, by Lawrence O. de Coster, Los Angeles, Cal., for Air Canada.

### ORDER DENYING DEFENDANT AIR CANADA'S MOTION FOR NEW TRIAL, ETC.

PEIRSON M. HALL, District Judge.

On September 30, 1974, the Court filed a Memorandum and Order denying the motion of defendant to dismiss and granting plaintiff's motion for summary judgment.

The defendant Air Canada filed motions for new and additional findings or an amendment of the judgment pursuant to the provisions of F.R.Civ.P., Rule 52, for a new trial and amendment of the judgment, pursuant to F.R.Civ.P., Rule 59, and for relief from judgment pursuant to F.R.Civ.P., Rule 60, together with affidavits and reference to previously filed memoranda of law.

The defendants urge several grounds, but there is no point in discussing any of them except that of jurisdiction.

From the Affidavits filed it appears that each plaintiff purchased, and there was delivered to the plaintiffs, from Air Canada, at Air Canada's place in Montreal, a 9-page booklet which on the outside is described as "passenger ticket and baggage check issued by Air Canada." All of the pages in the booklet except three are printed notices of one kind or another in French and in English, one of which carries a notice that the contracts between the parties were subject to the terms of the Warsaw Convention and the Hague Convention, whichever may be applicable. We are not concerned with any of those pages because the plaintiff is not raising any question concerning the terms of either the Warsaw Convention, The Hague Convention, or the Montreal Agreement. The other three pages of the booklet are designated as Flight Coupon No. 1, Flight Coupon No. 2, and Passenger's Coupon.

Each of them is identical in a form with various boxes indicating the information to be filled in the box for the particular occasion. In order to avoid a prolonged and complicated description of each of these I am attaching them as Appendix A herewith.

The three pages are furnished in the booklet issued to Mrs. Silverberg. All the boxes are copies or carbons of "Flight Coupon No. 1" which has printed in the same box "Passenger Ticket and Baggage Check Subject to Condition of Contract (page 2)." It is noted that immediately beneath Mrs. Silverberg's name there is a box "Not Valid Before" in which it is written "12 Jul 70," and immediately beneath that is another printed box, "Not Valid After" and the words "4 Aug 70" are written in. Immediately below that (4 Aug 70) is another large box at the top of which is printed "Good For Passage" and in the box is printed "From" with the word "Montreal" written. Beneath that is another box with the printed word "To" and the word "Los Angeles" written; and beneath that is another box which has no printing whatsoever in it except there is written the word "Montreal." Below that is the word "Fare" and in the box printed "Total" is the word "CA$" and the figures "26115."

Reading across and to the right at the top we find nothing in the box printed "Origin(e)" or the box printed "Destination." Below is a box with the printed word "Tour Code" and the written words "DA 30" which, according to one of the Affidavits, means that this was a tour to Discover America at a special price. There is nothing in the box which has printed on it "Date Of Issue" or in the box "In Exch For" or in the box "Date And Place Of Original Issue." Reading from the right after the words "Montreal" are a series of boxes, the first one of which is entitled "Fare Basis" in which are written the letters "YE" both after the word "Montreal" and in the box following the word "Los Angeles." The next box is entitled "Allow." It has the letters "PC"

in it in the box after "Montreal" but nothing in the box following the word "Los Angeles." The next box is entitled "Carrier" in which is written both following "Montreal" and "Los Angeles" the letters "AC" (meaning, of course, Air Canada). Following that is a box entitled "FLT/Class." In that box, after the word "Montreal" is written the numbers "621" under "FLT" and under the word "Class" is written the letter "Y" (it is assumed this means tourist as it does in the American tickets). In that box, after the word "Los Angeles" appears the letter "O." In the next box, following the word "Montreal" is printed "Date" and "5 Jul" is written in. Following the word "Los Angeles" is the letter "P" and the next box following the word "Montreal" is entitled "Time" in which is written "700," meaning 7 o'clock. In the box under that title following the word "Los Angeles" is the letter "E" and the next box following the word "Montreal" is the last one in that series and it is entitled "Status," with the letters written in after the word "Montreal" "OK," but in that box following "Los Angeles," is the letter "N."

The net result of the above is that the Coupon No. 1 showed that she was to be a tourist class passenger on Flight 621 leaving Montreal on the 5th of July at 7 o'clock and that everything was OK.

Then it is to be noted and must be emphasized that the letters appearing in the corresponding boxes following the word "Los Angeles" spell the word "OPEN." In other words, the flight, class, date, and hour of any flight from Los Angeles to Montreal was to be left open to be taken, or not taken, by the plaintiff sometime before the 4th of August, 1970, at her option.

None of the boxes following the word "Montreal" is filled in.

Obviously, Coupon No. 1 required Air Canada to take Mrs. Silverberg from Montreal to Los Angeles on Flight No. 621, in tourist class, leaving Montreal 5 July at 700 o'clock.

It is clear to me that while this was a contract between the parties, it was a contract that Air Canada would take Mrs. Silverberg to Los Angeles at a definite time and place, but it was at her *option* as to the *flight*, the *date* and *time of day she desired to return, as well as whether or not she desired to return at all on Air Canada,* and if she opted to return at a different time than that specified she would, as Mr. Barr says in his Affidavit, "have to purchase a new and a separate ticket at a different and increased rate."

It does not make any difference what the parties may call their transaction. It is evident that the contract entered into between Air Canada and Mrs. Silverberg, as evidenced by the ticket booklets and the Flight Coupon No. 1, was a contract for Air Canada to carry Mrs. Silverberg to Los Angeles on a certain flight, a certain time and a certain class, but that the time for her to return remained *completely* in her power. Coupon No. 2 was only a continuing offer by Air Canada to give her a ticket to return to Montreal between certain dates.

In Helvering v. Bartlett, C.C.A. 4 (1934), 71 F.2d 598, 600, it is said, an *option* is but a continuing offer, which is merged in the contract resulting from acceptance thereof.

In United States v. 70.39 acres of land, S.D.Cal., 164 F.Supp. 451, at 468, Judge Carter of this Court defined option as follows:

"An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option."

"An 'option,' in the law of contracts, is an agreement to keep an offer open; and a binding option is a contract, and also an offer which, when accepted, will create another contract." 17 C.J. S. Contracts § 1(1)f, p. 542.

"An option is a contract to keep an offer open. While such an agreement is unilateral and not mutual, in as much as one party has the choice of

concluding or not concluding the proposed transaction, while the other party has no such choice, . . ." 17 C.J.S. Contracts § 100(4), p. 804.

The Affidavit of Mr. Gordon Earl Barr, dated the 20th day of November, 1974, and filed here on December 4, 1974, stated that the person having Coupon No. 2, for which he had paid, would present it to Air Canada's local representative who would "check the availability of the space on the flight requested." If space were available, the agent would "check to see if the ticket was proper" for the return passage on an excursion round trip. "If the date was proper, the reservation agent would utilize the teletype keyboard and adjust Air Canada's computer to show that space had been booked on the particular flight in the passenger's name. The agent would then endorse the coupon which consists of *placing a sticker on the coupon*," as indicated on Appendix A, Flight Coupon No. 2, attached hereto. (*Underscoring* supplied.) The sticker would give the *flight number* the *class of flight*, the *date of leaving*, the *time of day of leaving*, and the *status of the flight*. *It is not until such a sticker is attached to the coupon that the holder of the option coupon has a ticket.* It is not until then that the holder of Flight Coupon No. 2 has a contract with the air carrier which gives her the right to board the plane to take her to Montreal as the *destination* indicated on that ticket. That never occurred because both passengers were killed on the flight which had its origin in Canada and its destination in Los Angeles.

■ Whatever other requisites there are to a valid contract, it is Hornbook law that *certainty* is essential. Here there was *no certainty* about *when, what flight number, what time of day* Mrs. Silverberg would return, if at all, to Montreal. That was all up to Mrs. Silverberg's option.

■ In speaking of the "place of destination," as used in the Warsaw Convention, it is noted that it does not say "final" or "ultimate" destination. In

that connection attention is called to the affidavit of Mr. Dumesnil and the 13 pages of regulations of C.T.C. No. 38 and C.A.B. 90. They are long, intricate and detailed, requiring considerable time for even an experienced person to read and get some understanding of them. Both Canadian Regulatory Authority [C.T.C.] and the United States C.A.B. recognized that "place of destination" is not limited to the place of origin if that place is named under an optional ticket as here: pages 10–D and 10–E (Exhibits I and J) to Dumesnil's affidavit are attached as Exhibits B and C hereto. It is noted that boxed item 7 (at middle left page 10–D) refers to open fares, and that it applies to Air Canada (*AC*). The phrase "outward *destination*" is used repeatedly in referring to Los Angeles among other cities west of the Mississippi included in the excursion rates; and that in paragraph (2) of paragraph A the phrase "outward destination" is also used in describing the right to return from Los Angeles to "any point in Canada served by A.C.," in this instance, Montreal. The phrases, "original point of origin" and "point of origin" are not once used to describe the "place of destination." Page 10–E (Exhibit C) is attached to show that the method of differentiation is made as to some air lines serving the eastern part of the United States (column 2 following subparagraph (D)(4).

The only conclusion that can be reached then, is that "the place of destination" as used in the Warsaw Convention is considered by both the Canadian C.T.C. and the United States C.A.B. to describe at least two "places of destination," viz., the "place of destination" of a *particular* flight either an "outward destination" from the "point of origin" or from the "outward point of destination" to any place in Canada.

Thus the "place of destination" under Art. 28 and Art. 1 of the Warsaw Convention of the flight on which Mrs. Silverberg was killed, was Los Angeles according to the ticket, which was the contract between the parties, and the

suit is properly filed in this Court which has jurisdiction.

For the foregoing reasons all the motions of defendant are denied.

APPENDIX A

**1170**

...s, Inc., Agent
...T PASSENGER FARES TARIFF NO. DA-1

86th Revised Page 10-D
Cancels 85th Revised Page 10-D

## SECTION I — RULES AND REGULATIONS

**CIRCLE TRIP FARES**

(Not applicable to Joint Triangle Fares) The fare for a circle trip shall be the sum of 50 percent (determined in accordance with Table I of the governing rules tariff) of the applicable round trip fares published herein:

(1) Where the circle trip involves one stopover, from the point of origin to point of stopover, and from point of stopover to the original point of origin, or

(2) Where the circle trip involves two stopovers, from point of origin to the first point of stopover, from the first point of stopover to the second point of stopover, and from the second point of stopover to the original point of origin.

EXCEPTION 1: (Applicable only to RW, FL, or OZ). The fare for a circle trip via RW, FL or OZ on which two stopovers are made, with one point of stopover being the outward destination and the other point of stopover being a scheduled stop at an intermediate point on the routing of the excursion fare published herein and which is not a point to which an excursion fare is published herein, will be the round trip excursion fare published herein from the point of origin to the outward destination.

EXCEPTION 2: (Applicable only to AC or CP) The fare for a circle trip via CP on which more than one stopover is made, will be the round trip excursion fare published herein from the point of origin to the outward destination.

EXCEPTION 3: (Applicable only to WA) Wherever a stopover is permitted at Vancouver without additional charge as noted in connection with specific fares, the term "point of stopover", as used in this rule, shall mean a point other than Vancouver.

EXCEPTION 4: (Applicable only to †EA, NA or NE.) Whenever a stopover is permitted at Miami/Ft. Lauderdale, with an additional charge as noted in connection with specific fares, the term "point of stopover," as used in this rule, shall mean a point other than Miami/Ft. Lauderdale.

EXCEPTION 5: (Applicable via WA only) In connection with travel to/from Hilo/Honolulu, this rule applies only when all portions of transportation are via WA.

EXCEPTION 6: (Applicable to BN only) where no fare is published herein between any of the points specified in (2) above the applicable coach way first class or coach fare may be used to complete the circle trip fare.

**OPEN JAW FARES**

(A) (Applicable via AC, RW, AA, BN, CP, CO, DL, EA, FL, MO, NA, NE, NW, PA, TW, UA and WA)The fare shall be the sum of 50 percent (determined in accordance with Table I of the governing rules tariff) of the applicable round trip excursion fares published herein:

(1) From any point of origin in Column 1 below to the outward destination described in Column 2 below, via one or more carriers, and returning from any other point described in Column 2 below via the same or a different carrier or carriers, to the original point of origin. No stopover will be permitted, on such trips, between the point of origin and the outward destination or between the inward point of departure and the point of origin.

(2) From any point of origin described in Column 2 below to the outward destination described in Column 1 below, via one or more carriers, and returning from the outward point of destination described in Column 1 below, via the same or a different carrier or carriers, to a destination described in Column 2 below other than the original point of origin. Only one stopover, at the outward destination will be permitted on such trips.

| Column 1 | Column 2 | |
|---|---|---|
| Any point served by RW, AA, BN, CP, CO, DL, EA, FL, MO, NA, NE, NW, TW, UA or WA in the Continental U.S. or by AC, RW, AA, CP, UA or WA in Canada other than points named in Column 2, except as noted. | Bakersfield, Cal. | Palm Springs, Cal. |
| | Burbank, Cal. | Phoenix, Ariz. |
| | Fresno, Cal. | Portland, Ore. |
| | Hilo, Haw.(Applicable via BN, CO, NW, PA, UA, and WA only) | Reno, Nev. |
| | | Sacramento, Cal. |
| | | San Bernardino, Cal. |
| | Honolulu, Haw.(Applicable via BN, CO, NW, PA, UA, and WA only) | San Diego, Cal. |
| | | San Francisco, Cal. |
| | | Santa Ana, Cal. |
| | Las Vegas, Nev. | Santa Barbara, Cal. |
| | Long Beach, Cal. | Seattle, Wash. |
| | Los Angeles, Cal. | Stockton, Cal. |
| | Merced, Cal. | Vancouver, B.C. |
| | Modesto, Cal. | Visalia, Cal. |
| | Monterey, Cal. | West Yellow- |
| | Oakland, Cal. | stone, Mont. |
| | Ontario, Cal. | |

(B) (Applicable via CP). The fare shall be 50 percent (determined in accordance with Table I of the governing rules tariff) of the applicable round trip excursion fares published herein:

(1) From any point of origin described in Column 1 below to the outward destination described in Column 2 below and returning from any other point described in Column 2 below to the original point of origin.

(2) From any point of origin described in Column 2 below to the outward destination described in Column 1 below and returning from the outward point of destination described in Column 1 below to a destination described in Column 2 below other than the original point of origin

| Column 1 | Column 2 | |
|---|---|---|
| San Francisco, Cal. | Calgary, Alta. | Toronto, Ont. |
| | Edmonton, Alta. | Vancouver, B.C. |
| | Montreal, Que. | Windsor, Ont. |
| | Ottawa, Ont. | Winnipeg, Man. |

(Continued on next page)

For explanation of abbreviations, reference marks and symbols used but unexplained hereon, see Pages 4 and 5.

ISSUED:    May 12, 1970.

EFFECTIVE:    June 11, 1970    (Except as Noted)

(Printed in U.S.A.)    † — Effective May 13, 1970 and issued on one (1) day's notice under Special Tariff Permission No. 26600 of the Civil Aeronautics Board.    CORRECTION NO. 4639

**EXHIBIT B**

**The Tariff Publishers, Inc., Agent**
**LOCAL AND JOINT PASSENGER FARES TARIFF NO. DA-1**

3rd Revised Page 10-E
Cancels 2nd Revised Page 10-E

| RULE | SECTION 1— **RULES AND REGULATIONS** |
|---|---|

**7** OPEN JAW FARES (Continued)

**(C)** (Applicable via DL,EA,NA,NW, PA,TW and UA.The fare shall be the sum of 50%(determined in accordance with Table I of the governing rules tariff) of the applicable round trip excursion fares published herein:

From any point of origin described in Column 2 below to the outward destination described in Column 1 below and returning from any other point described in Column 1 below via the same or a different carrier or carriers, to the original point of origin. No stopover will be permitted, on such trips, between the point of origin and the outward destination or between the inward point of departure and the point of origin.

| Column 1 | Column 2 |
|---|---|
| Any point served by DL,EA NA,NW,TW or UA in Florida | Any point served by DL,EA,NA, NW, PA,TW or UA in a state other than Florida |

**(D)** (Applicable via AA,BN,CP ,DL,EA,MO,NA,NE,NW,TW and UA); The fare shall be the sum of 50 percent (determined in accordance with Table I of the governing rules tariff) of the applicable round trip excursion fares published herein:

(1) From any point of origin described in Column 2 below, via one or more carriers, and returning from any other point described in Column 2 below, via the same or different carrier or carriers, to the original point of origin. No stopover will be permitted, on such trips, between the point of origin and the outward destination or between the inward point of departure and the point of origin.

(2) From any point of origin described in Column 2 below to the outward destination described in Column 1 below, via one or more carriers, and returning from the outward point of destination described in Column 1 below, via the same or a different carrier or carriers, to a destination described in Column 2 below other than the original point of origin. Only one stopover will be permitted on such trips.

(3) (Applicable to NE only) From any point of origin described in Column 2 below to the outward destination described in Column 1 below and returning from any other point described in Column 1 below to the original point of origin. No stopover will be permitted, on such trips, between the point of origin and the outward destination and the point of origin.

(4) (Applicable to NE only) From any point of origin described in Column 1 below to the outward destination described in Column 2 below and returning from the outward destination described in Column 2 below to a destination described in Column 1 below other than the original point of origin. Only one stopover, at the outward destination will be permitted on such trips.

| Column 1 | Column 2 | |
|---|---|---|
| Any point served by AA,BN,CP ,DL,EA,MO, NA,NE,NW,TW or UA in the Continental U. S. or Canada other than points named in Column 2. | Allentown,Pa. | Montreal, Canada |
| | Augusta-Waterville, Me. | Nantucket, Mass. |
| | Baltimore, Md. | New Bedford, Mass. |
| | Bangor, Me. | New Haven, Conn. |
| | Bar Harbor, Me. | Newark, N. J. |
| | Berlin, N.H. | Newport,Vt. |
| | Boston, Mass. | New York, N.Y. |
| | Burlington,Vt. | Philadelphia, Pa. |
| | Hartford, Conn. | Portland, Me. |
| | Hyannis, Mass. | Presque Isle- |
| | Keene, N.H. | Houlton, Me. |
| | Laconia, N.H. | Providence, R.I. |
| | Lewiston, Me. | Rockland, Me. |
| | Manchester-Concord, N.H. | Washington, D. C. |
| | Martha,s Vineyard, Mass. | White River Junction, Vt. |
| | Montpelier, Vt. | Wilmington, Del. |
| | | Worcester, Mass. |

**(E)** (Applicable via UA and/or NA, Except as noted): The fare shall be the sum of 50 percent (determined in accordance with Table I of the governing rules tariff) of the applicable round trip excursion fares published herein:

(1) From any point of origin described in Column 1 below to the outward destination named in Column 2 below and returning from any other point described in Column 2 below to the original point of origin. No stopover will be permitted on such trips, between the point of origin and the outward destination or between the inward point of departure and the point of origin, except as noted in connection with specific fares.

(2) From any point of origin described in Column 2 below to the outward destination described in Column 1 below and returning from the outward point of destination described in Column 1 below to a destination described in Column 2 below other than the original point of origin. Only one stopover at the outward destination will be permitted on such trips, except as noted in connection with specific fares.

(3) From any point of origin described in Column 2 below and returning from any other point described in Column 1 below to the original point of origin. No stopover will be permitted on such trips, between the point of origin and the outward destination or between the inward point of departure and the point of origin, except as noted in connection with specific fares.

For the provisions in Rule 7(E) (1), (2) and (3) in effect prior to the effective date hereof, see 2nd Revised Page 10-F.

For explanation of abbreviations, reference marks and symbols used but unexplained hereon, see Pages 4 and 5.

| ISSUED: MARCH 4, 1970 | EFFECTIVE: APRIL 3, 1970 |
|---|---|
| (Printed in U.S.A.) | CORRECTION NO. 4202 |

EXHIBIT C