John M.K. LEE and Margaret Lee, Plaintiffs,

v.

CHINA AIRLINES, LTD., a corporation, the Boeing Company, a corporation, Min Yuan Ho, Wilmington Trust Company, Pratt & Whitney, Ju Yu Chang, Kno Pin Wei, Chien Yran Liao, Po Chao Su, and Su Shin Lung, Defendants.

No. 86–1015 SVW.

United States District Court, C.D. California.

July 28, 1987.

Linda S. Hedemann, Chris Brunner, Edward B. Djang, Law Offices of Edward B. Djang, Orange, Cal., for plaintiffs.

David A. Senior, Condon & Forsyth, Los Angeles, Cal., for defendant China Airlines.

Paul Alvarez, George A. Manfredi, Johnsen, Manfredi & Thorpe, Los Angeles, Cal., for defendants the Boeing Co.

## ORDER RE MOTION TO DISMISS

WILSON, District Judge.

Defendant China Airlines has moved to dismiss because of lack of jurisdiction under the Warsaw Convention ("the Convention"). *See* 49 U.S.C.A. § 1502 (West 1976). The plaintiffs, John and Margaret Lee, argue that Article 28 of the Convention does not require dismissal of China Airlines, and that even if it does, the court should ignore the Convention's mandate because the Convention is unconstitutional. The court does not agree with either argument, and it therefore grants China Airlines' motion to dismiss.

### FACTUAL BACKGROUND

This case is one of several involving China Airlines Flight 006 (a Boeing 747) on February 19, 1985. The Lees were injured on that flight when the 747 made an unexpected and uncontrolled 31,000 foot descent off the coast of California.

The Lees are permanent residents of California. Mr. Lee is in the international garment manufacturing business, so he makes frequent trips to Asia. They purchased the tickets which allowed them to travel on Flight 006 in Hong Kong. These tickets were for round trip travel from Hong Kong to San Francisco. The date and flight number on the return portion of the ticket were left open.

### DISCUSSION

#### A. THE WARSAW CONVENTION REQUIRES DISMISSAL OF CHINA AIRLINES

Article 28 of the Warsaw Convention will not allow the Lees' case against China Airlines to be heard in the United States. Therefore, the court must dismiss this case.

#### 1. *Applicability of the Convention*

■ The Lees argue that the Warsaw Convention does not apply in this case because their ill-fated flight did not depart from a country that is a party to the Convention. They are incorrect.

The Convention applies to "international transportation." This term is defined in Article 1, Paragraph (2) of the Convention as:

> [A]ny transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either in the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place in a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this Convention.

According to this language, the Convention will apply in two situations. First, it applies, if according to the contract of transportation (e.g., a plane ticket), travel will be from one High Contracting Party to another. Second, if the contract of transportation provides for travel from a High Contracting Party, for stops abroad, and then for a return to that same High Contracting Party, then the Convention also applies.

The ticket in this case provided for transportation from Hong Kong to Taipei to San Francisco to Hong Kong. Because the Convention only allows for one destination, *see In re Alleged Food Poisoning Incident,* 770 F.2d 3 (2d Cir.1985), the departure point and the destination of the Lees must officially be considered Hong Kong. Thus, the Convention will not apply in this case unless Hong Kong is a High Contracting Party.

Contrary to the Lees' assertions, Hong Kong qualifies as a High Contracting Party to the Convention. The United Kingdom is a High Contracting party, and its adherence to the Convention covers Hong Kong. *See* Av.L.Rep. (CCH) ¶ 27,054, at 24,059–3 n. 19.

#### 2. *Article 28 Requires Dismissal of China Airlines*

■ Under Article 28 of the Convention, an action can be brought under the terms of the Convention only in the following places: (1) the carrier's domicile; (2) the

carrier's principal place of business; (3) the place where the ticket was purchased; or (4) the passenger's place of destination.

The airline asserts that under the above test, the Lees may only sue in Hong Kong or Taiwan. They point out that the carrier's domicile is Taiwan, that its principal place of business is Taiwan, and that the ticket was purchased in Hong Kong. The Lees do not dispute these three points. The parties do dispute, however, the location of the Lees' place of "destination." The Lees say that their destination was San Francisco, but the airline says the destination was Hong Kong. The airline is correct.

The key principle in determining destination under the Convention is that for any given ticket, there can only be one destination. *See In re Alleged Food Poisoning Incident,* 770 F.2d 3 (2d Cir.1985). As the Second Circuit explained in that case, the Convention mandates that "destination" be determined by reference to a passenger's ticket and not by reference to the place to which an aircraft is traveling when an incident occurs. Given this frame of reference, the courts have held that for the purposes of the Convention, a journey can have only one destination, no matter how many carriers are involved, *see Petrire v. Spantax, S.A,* 756 F.2d 263 (2d Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985), or how many intermediate stopping places are scheduled, *see Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir.1983).

This interpretation of Article 28, which only allows for one destination for each journey, is supported by Article 1 of the Convention. *See Food Poisoning,* 770 F.2d at 6. As that case points out, Article 1 refers to destination in the singular only, "implying that there is only one destination' for an undivided transportation." *Id.* Furthermore, Article 1 draws a distinction between an "agreed stopping place" and a "destination," reinforcing the uniqueness of the "destination" for Convention purposes.

Because each journey governed by the Convention can have only one destination,

courts are nearly unanimous in holding that when a passenger has purchased a round trip ticket, the *destination* is the place where the trip began. *See, e.g., Food Poisoning,* 770 F.2d at 3; *Petrire,* 756 F.2d 263; *Vergara v. Aeroflot "Soviet Airlines",* 390 F.Supp. 1266 (D.Neb.1975). In this case, then, the Lees' destination was Hong Kong because that was the ultimate stopping place of their travels according to their tickets.

The Lees argue that their "destination" was San Francisco, not Hong Kong. They note that although they purchased a round trip ticket, the return portion of the ticket did not specify a date or a flight number. They argue that under *Aanestad v. Air Canada Inc.,* 390 F.Supp. 1165 (C.D.Cal. 1975), when passengers carry such "open" round trip tickets, the destination is the stopping point of the first leg of the trip.

Although *Aanestad* was decided by a judge in this district, this court respectfully declines to follow its holding because it finds *Aanestad*'s reasoning unpersuasive. *See Starbuck v. City & County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another."). The *Aanestad* court held that if the return leg of a round trip ticket is left open, then the airline and a passenger have not made a completed contract for the return leg. Rather, the court held that in the open ticket situation, the airline only makes an offer to transport for the return leg and that therefore the "destination" is the termination point of the first leg.

The court declines to follow *Aanestad* because it finds its characterization of the nature of airline tickets to be inaccurate. Rather, the court adopts the criticism of *Aanestad* expressed in *Butz v. British Airways,* 421 F.Supp. 127 (E.D.Pa.1976), *aff'd,* 566 F.2d 1168 (3d Cir.1977).

Whether the return portion of the ticket is characterized as an option or a contract, the carrier was legally bound to transport the passenger back to the place of origin within the prescribed time and the passenger for her part agreed to pay

the fare and, in fact, did pay the fare. Thus there was mutuality of obligation and a binding contract of carriage. The fact that the passenger could forego her rights under the contract does not make it any less binding. Certainly, if the parties did not contemplate the return leg of the journey, the passenger would not have paid for it and the carrier would not have issued a round trip ticket.

The court agrees with the decision in *Vergara v. Aeroflot "Soviet Airlines"*, 390 F.Supp. 1266, that the best way to describe an airline ticket is as a "highly modifiable contract." Given its conclusion about the nature of the contract in an airline ticket, the court has no choice but to hold that the Lees' "destination" under Article 28 was Hong Kong since it was the last point mentioned on the Lees' round trip tickets.

## B. THE WARSAW CONVENTION IS CONSTITUTIONAL

The Lees argue that even if the court finds that Article 28 requires dismissal of China Airlines, the court should still not dismiss them because the Warsaw Convention is unconstitutional. The Lees make three different arguments on the constitutionality issue. First, they argue that the Convention constitutes a substantive due process violation because it impairs the allegedly fundamental right to international travel. Second, they argue that the Convention constitutes an equal protection violation because it treats passengers on the same airplane differently depending upon the content of their tickets. Finally, they argue, at the suggestion of the court, that the Convention is a procedural due process violation because it deprives them of the opportunity to have their tort claim heard in the United States. The court finds all three arguments to be without merit.

## A. SUBSTANTIVE DUE PROCESS

The Lees argue that the Convention violates the fifth amendment because it impairs a fundamental right. They assert that they have a fundamental right to travel internationally and that the liability limitation of the Convention infringes upon this right. If such a right is impaired, then the court must examine the Convention with strict scrutiny to see if the Convention furthers a compelling governmental interest. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618, 643–44, 89 S.Ct. 1322, 1336, 22 L.Ed.2d 600, 620 (1969) (Stewart, J. concurring). The strict scrutiny analysis need not be reached, however, because the court finds that while the right to travel interstate is fundamental, the right to international travel is not. Therefore, the court need only evaluate the Convention under a rational basis test, and under that test, the Convention passes muster.

In support of their argument that international travel is a fundamental right, the Lees cite *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1309 (9th Cir.1982) ("International travel, like interstate travel, is a fundamental right."). This case, however, does not appear in accordance with prior Supreme Court authority. *See Califano v. Aznavorian*, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978) ("[L]egislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel, such as durational residency requirements imposed by the States.") 439 U.S. at 176–77, 99 S.Ct. at 475. The Court added:

> [T]his court has often pointed out the crucial difference between the freedom to travel internationally and the right of interstate travel. The constitutional right of interstate travel is virtually unqualified. ... by contrast, the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. As such, this "right" the Court has held, can be regulated within the bounds of due process. (Citations omitted).

*Aznavorian*, 439 U.S. at 176, 99 S.Ct. at 475.

*Aznavorian* makes clear that limitations upon international travel are to be evaluated under a rational basis test. *Aznavorian* dealt with legislation that provided that a person could not receive SSI benefits during a month when that individual was

out of the country. The Court upheld this legislation, saying that it only had an "incidental" effect on international travel. *Aznavorian,* 439 U.S. at 177, 99 S.Ct. at 475. Given this incidental impact, the Court said that the limitation should be upheld unless it is "wholly irrational." *Id.*

This court turns, then, to an evaluation of the Lees' contention that the Convention impairs their right to travel and holds that the Convention has only an incidental impact on international travel and that this limitation is not wholly irrational.

First, the court notes that the impact of the Convention upon international travel is de minimus. While the liability and jurisdictional limitations in the Convention may have a slight chilling effect upon some people considering a trip abroad, the Convention does not prevent anyone from taking such a journey. The court notes that the Convention does not prevent someone who is concerned about the liability limitation from obtaining additional insurance before embarking on a journey abroad.

Whatever limitation there is, however, is justifiable. The Convention was designed to establish uniformity in the law regarding international aviation. *See In re Mexico City Aircrash,* 708 F.2d 400 (9th Cir. 1983); *see also Hague Protocol to Warsaw Convention: Hearings Before Senate Committee on Foreign Relations,* 89th Cong., 1st Sess. 49 (1965) (statement of Stuart G. Tipton, President, Air Transport Association, accompanied by John E. Stephen, General Counsel, Air Transport Association) ("[T]he unique characteristic of the Warsaw Convention [is] that it creates a system of law that is worldwide".). It recognizes that aviation links many countries with different languages, customs, and legal systems, and this goal is achieved somewhat through standard documentation, procedures for claims, and jurisdictional requirements. Comment, *The Growth of American Judicial Hostility Towards the Liability Limitations of the Warsaw Convention,* 48 J. Air L. & Com. 805, 807 (1983). Because the Warsaw Convention helps to achieve the goal of uniformity in the law regarding international

air travel, the court finds that the treaty passes the rational basis test.

## B. EQUAL PROTECTION

The Lees also suggest that Article 28 violates the equal protection clause of the fifth amendment because it makes distinctions among passengers on the same plane depending upon their tickets. They note that while the journeys of some passengers on a particular plane may be governed by the Convention, other journeys may not be so covered. Furthermore, even when the Convention applies to two passengers on the same plane, the Convention may allow one passenger to sue in the United States, but prohibit the other passenger from doing so. This differentiation among passengers, however, does not amount to an equal protection violation because no fundamental right is impaired by the distinction, and the distinction has a rational basis.

Treating similarly situated people differently is not always unconstitutional. *See, e.g., Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483 75 S.Ct. 461, 99 L.Ed. 563 (1955). Usually, making such distinctions is acceptable if a rational basis exists for the distinction. If, however, the classification created is suspect or impinges upon a fundamental right, then a court should apply strict scrutiny in reviewing the law creating the classification. *See, e.g., Korematsu v. United States,* 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (suspect class); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (fundamental right).

In this case, the court must apply a rational basis test. First, as set forth above, the Convention does not impinge on any fundamental rights. Second, the classifications created are not suspect.

The court finds that the distinctions made between passengers on the same plane because of the provisions of the Convention are rational. As discussed above, the goal of the Convention is to bring uniformity to the law governing international air travel. This goal is fostered by the method set up by the Convention to determine whether it is applicable to a particular

journey. The Convention dictates that applicability is determined by the place of departure and the place of destination as listed upon a passenger's ticket. This mechanism insures that the Convention will only apply to journeys with a clear nexus to High Contracting Parties, and it also ensures that passengers will have had some notice and an opportunity to choose whether they are willing to subject themselves to the dictates of the Convention. Thus the Convention does create a rational system for bringing some uniformity to the law regarding international air travel in a world in which every nation has not agreed to abide by its terms. In light of this analysis, the court cannot say that distinctions created by the Convention among passengers on the same plane are irrational.

## C. PROCEDURAL DUE PROCESS

The Lees argue that the jurisdictional limitation violates due process because it prevents American residents who were injured in or near the United States from bringing a tort action here. This argument also fails.

When engaging in due process analysis, the court must first examine if a governmental action is infringing upon a life, liberty, or property interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). If the court finds that such an interest is affected, then the next question is what process is due. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). To determine what process is due, the court must go through a three part analysis:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33–34 (1976).

In this case, it is uncertain whether the Lees have a property interest in their claim. The Ninth Circuit has held that the Convention itself creates a cause of action. *In re Mexico City Aircrash,* 708 F.2d 400 (9th Cir.1983). This claim probably constitutes a property interest, but the question is debatable. *See In re Aircrash in Bali,* 684 F.2d 1301, 1312 & n. 10 (discussing the circumstances in which a tort claim constitutes a property interest). The court need not resolve this question however because even if it finds that the claim constitutes a property interest, the Lees' due process argument fails because the Convention provides the Lees with adequate procedural protections.

Assuming for the sake of argument, then, that the Lees have a property interest, the next question is what process is due. Turning to the *Mathews v. Eldridge* test quoted above, the court finds that dismissal here would not be a due process violation. The Lees assert that if their claim against China Airlines is dismissed, they will not be able to receive an adequate hearing of their claims abroad in either Taiwan or Hong Kong. The Lees have not shown, however, that having their claims heard abroad will create a substantial risk of "erroneous deprivation." They have come forward with almost no evidence regarding the nature of judicial proceedings in either Hong Kong or Taiwan. The Lees' only contention regarding the unfairness of potential proceedings in either Taiwan or Hong Kong is that it would be unfair to subject them to the uncertainty regarding what law will apply to this case in those countries. At least in this case, however, some of the usual mystery regarding what law a foreign forum will apply disappears. The court surmises that the Warsaw Convention will figure prominently in the decision making process over there since both Hong Kong and Taiwan adhere to it. The Ninth Circuit recently noted that "the cardinal purpose of the [Convention] is to ensure the existence of a uniform and universal system of recovery for losses incurred in the course of international air transpor-

tation." *Mexico City*, 708 F.2d at 415–16. Because the plaintiffs have not met their burden of showing the proceedings abroad are likely to be erroneous, the court cannot act further on the Lees' due process contentions.

In conclusion, then, the court disagrees with the Lees' contention tht the Warsaw Convention is unconstitutional and dismisses their claims in accordance with the Convention's mandate.

IT IS SO ORDERED.