956 F.2d 1166
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Beatrice AGUIRRE, Personal Representative of the Estate of
Alfredo Aguirre, Deceased, and Patrick Antone,
Plaintiffs-Appellants,
v.
UNITED STATES of America and United States Department of
Defense, Defendants-Appellees.
 No. 90-16330.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided March 3, 1992.
As Amended on Denial of Rehearing
July 8, 1992.
 
 Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs Beatrice Aguirre and Patrick Antone appeal the district court's grant of summary judgment in favor of the government in this Federal Tort Claims Act case. Plaintiffs contend that summary judgment was improper because Arizona law allows recovery under these circumstances and because the district judge erroneously failed to follow the lead of a brother judge who had previously refused to grant the government's motion for summary judgment in a factually similar case. The district court had jurisdiction pursuant to 28 U.S.C. § 1331; we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 FACTS AND PROCEEDINGS
 I. The Accident
 
 3
 On May 19, 1986 an explosion at a Coolidge, Arizona munitions manufacturing plant owned by Dela-Tek, Inc. killed employee Alfredo Aguirre and injured employees Patrick Antone and Rodolfo Chavez. All three were employed as chemical processors/blenders and their responsibilities included operating a mixing machine that created a magnesium teflon compound used in M-22 cartridges. At the time of the accident, Aguirre and Antone had been cleaning a blending machine. The explosion apparently resulted from a spark generated when one of the blenders attempted to scrape dry chemical residue from the sides of a mixer with a carbon-steel screwdriver. No supervisor was present during cleaning operations that morning and none observed the cause of the explosion.
 
 
 4
 Aguirre, Antone and Rodolfo Chavez were instructed to use copper scrapers and acetone to remove the chemical residue from the blending machine surfaces. The men were also told that residue was to be scraped off only if it was wet. On the morning of the accident, blending operations were terminated because air conditions that day included low relative humidity. Stopping a blend before it is completed and then attempting to clean the machine was considered more dangerous than continuing the blending process until a completed mix was ready. As a result, when the low humidity conditions were discovered, the blenders continued their operations until they had finished the mix that had been in progress.
 
 II. Dela-Tek's Safety Procedures
 
 5
 At the time of the accident Ruben Chavez was responsible for supervising Aguirre's and Antone's work. Chavez had nineteen years of experience in chemical processing and ordinance manufacturing, and was responsible for insuring that the blenders/processors were properly trained to do their jobs. To insure that the blender/processors learned the tasks associated with their jobs, Ruben Chavez generally required them to observe how he performed the blending operation and the subsequent cleaning process over a several-week period. Chavez trained Rodolfo Chavez and Antone by this method, but not Aguirre.
 
 
 6
 Blender/processors also were to receive a short introductory safety lecture upon commencing employment at the plant; Antone never received such a lecture. On several occasions, Ruben Chavez and another supervisor, Jack Moore, explained to Antone that the use of protective smocks and stats were essential in assuring safety in the plant. Antone received a copy of Dela-Tek's employee handbook, but was never given a copy of the company's safety handbook and no supervisor ever reviewed with him the contents of the employee manual. Aguirre received no written safety instructions whatsoever.
 
 
 7
 Dela-Tek provided wrist and leg stats, smocks, fire-retardant coveralls, and protective goggles for blenders/processors to wear during mixing and cleaning operations. In addition, the company's safety manager, Frank Corral, held periodic safety meetings and distributed safety information sheets to employees. The company maintained a safety suggestion box and maintained an employee safety committee that met once per week. The employee handbook included some explanation of Dela-Tek's safety rules and policies, and each employee was required to sign a form entitled "Acceptance of Working Conditions and Plant Safety Rules." Antone signed such a form, but Aguirre did not.
 
 
 8
 III. Dela-Tek's Contract with the Department of Defense
 
 
 9
 At the time of the accident, Dela-Tek was engaged in the fabrication of various ordnance for the Department of Defense pursuant to two government contracts. The contracts included several provisions dealing with safety requirements at the Coolidge manufacturing facility. The relevant provisions made clear that day-to-day responsibility for ensuring safety at the production facility remained with Dela-Tek and specifically mandated that Dela-Tek obey any applicable federal or local safety laws. The contracts also required the Department of Defense and Dela-Tek to specifically identify and select other applicable safety guidelines.[1] The parties agreed that Dela-Tek would comply with the "Safety Precautions for Ammunition and Explosives." This clause, which is required by regulation to be included in all contracts involving ammunition or explosives, required Dela-Tek to comply with the DoD Contractor's Manual for Ammunition, Explosives and Related Dangerous Materials.
 
 
 10
 The Safety Precautions for Ammunition and Explosives authorized the government to inspect Dela-Tek's plant for compliance with the Contractor's Manual safety guidelines. The Department of Defense Specialized Safety Manual guides the government in its conduct of these periodic safety inspections. The Specialized Safety Manual authorizes government safety inspectors to provide technical advice and assistance to contractors on safety issues, including helping a contractor implement any corrective actions deemed necessary as a result of the quarterly inspection.
 
 
 11
 When an inspector found a condition that violated the safety provision of the contracts, the inspector was to decide whether increased surveillance by the government was necessary and whether the contractor must attempt to correct the problem. In the case of a particularly serious safety problem, the government inspector was authorized to set a specific time frame within which the problem must be corrected. Once a corrective measure was mandated, the inspector was required to follow up and ensure that the contractor implemented the change in procedure or operation on a timely basis. The government was authorized to suspend or cancel the contracts if Dela-Tek was repeatedly or constantly out of compliance with safety guidelines.
 
 
 12
 The government's contracts with Dela-Tek provided that government safety inspectors could visit its munitions plant on a quarterly basis. Included in the items to be inspected were Dela-Tek's written safety guidelines and procedures; the plant's in-house safety program; facility construction and maintenance; equipment design, maintenance and operation; control of hazardous materials; operational performance and its consistency with contractually required procedures; and the status of safety deficiencies noted by inspectors on prior visits. The Specialized Safety Manual also required the government to insure that Dela-Tek employees used non-sparking tools when working with explosive materials.
 
 
 13
 The contracts did not expressly give the government power to supervise Dela-Tek's safety program on a day-to-day basis. The government did not intervene in personnel decisions at the plant, train Dela-Tek employees, specify sources for the acquisition of equipment or production materials, select subcontractors, or prepare a safety manual for Dela-Tek's munitions manufacturing operations.
 
 
 14
 IV. The Government's Inspections of the Dela-Tek Plant
 
 
 15
 Cecille King, a government inspector, conducted a safety survey at the Coolidge Dela-Tek plant on March 19, 1986. This was the last government inspection of the facility before the fatal accident. During this inspection, King discovered safety problems necessitating correction within a specific time period. King concluded that most of Dela-Tek's safety operating procedures were deficient and that the company's safety program did not comply with the terms of its contracts. Accordingly, she asked the government's administrative contracting officer to send Dela-Tek an official notification that corrective action would be necessary. The contracting officer did not send such notification. King also conducted a pre-award safety inspection at the Dela-Tek plant on the same date as the quarterly safety inspection and recommended that the company not receive any new government contracts.
 
 
 16
 In April 1986 King made a follow-up visit to the Dela-Tek plant. She again determined that Dela-Tek did not have in place adequate safety precautions and operating procedures. King never found Dela-Tek in compliance with the safety provisions of its contracts.
 
 V. The McAfee Accident
 
 17
 On March 26, 1986, after King's second visit to the Dela-Tek plant, Aguirre and a co-employee, James McAfee were injured in an explosion in the Dela-Tek facility's granulating room. The incident occurred after a granulating machine used to process magnesium teflon powder jammed and McAfee attempted to scrape powder from the machine with a knife.
 
 
 18
 McAfee later sued the government under the FTCA, alleging that the government negligently exercised control over Dela-Tek's safety program. Judge Earl Carroll of the District of Arizona refused to grant the government summary judgment in the case. See McAfee v. United States, No. CIV-87-2231-PHX-EHC (D.Ariz.1989).
 
 VI. Proceedings in the District Court
 
 19
 On March 14, 1989 Aguirre's mother, Beatrice Aguirre, and Patrick Antone filed suit against the United States, alleging negligence in the supervision and enforcement of safety measures at the Dela-Tek munitions plant that led to the May 1986 explosion. The government denied all allegations, asserted that the plaintiffs were contributorily negligent, and moved for summary judgment. On April 3, 1990, Judge Hardy granted the government's motion for summary judgment. Plaintiffs timely appealed.
 
 STANDARD OF REVIEW
 
 20
 We review the propriety of summary judgment de novo. Image Technical Service, Inc. v. Eastman Kodak Co., 903 F.2d 612, 614 (9th Cir.1990), cert. granted, 111 S.Ct. 2823 (1991). We must determine, viewing the evidence in the light most favorable to the plaintiffs, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. Id.
 
 ANALYSIS
 
 21
 The government argues that Arizona law[2] does not impose liability upon it for the behavior of Dela-Tek.[3] The plaintiffs, on the other hand, assert that Restatement (Second) of Torts § 414, which has been adopted by the Arizona courts, allow for liability.[4] The government has the better of this argument.
 
 
 22
 Restatement (Second) of Torts § 414 (hereinafter section 414) provides as follows:
 
 
 23
 One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
 
 
 24
 The Arizona courts have held that this section imposes liability only if the employer of the independent contractor retains control "over the method of doing details of the work and [the control] must be such that the contractor is not entirely free to do the work in his own way." Cordova v. Parrott, 146 Ariz. 79, 82-83, 703 P.2d 1228, 1231-32 (Ariz.App.1985). An employer is not liable if it retains only a general supervisory authority over the workings of the contractor's place of business. Koepke v. Carter Hawley Hale Stores, Inc., 140 Ariz. 420, 682 P.2d 425, 430 (Ariz.App.1984) (citing German v. Mountain States Tel. & Tel. Co., 11 Ariz.App. 91, 95, 462 P.2d 108, 112 (1969)); see also Martinez v. ASARCO, Inc., 918 F.2d 1467, 1475 (9th Cir.1990) (per curiam).
 
 
 25
 These cases are not factually distinguishable and are therefore fatal to plaintiffs' case. In Cordova, the court refused to impose liability for the death of a construction worker upon the owner of a mobile home that had fallen off a hydraulic jack during a move because the extent of the owner's control was limited to the choice of a new location for the mobile home. 146 Ariz. at 82, 703 P.2d at 1231.
 
 
 26
 In Koepke, a business invitee was injured when an employee of an independent contractor hired to refurbish the interior of a retail store stretched a chalk line across an isle. The court refused to hold the retailer liable under section 414 despite the fact that the retailer maintained a safety committee to oversee the remodeling project and that an employee of the retail chain was specifically empowered to supervise the project and insure customer safety. While the retailer had authority to oversee the "general progress" of the remodeling project to "insure that it complied with contract specifications," it did not have extensive control over the activities of the contractor's workers. Work schedules and operational procedures were handled by the contractor's on-site foremen. 140 Ariz. at 426, 682 P.2d at 431.
 
 
 27
 Section 414 imposes liability on the government only if it breached a duty to ensure that Dela-Tek's employees had a safe place to work.[5] See Lewis v. N.J. Riebe Enterprises, Inc., 825 P.2d 5, 9 (Ariz. 1992). The scope of that duty "extends only so far as the amount of control the [employer] retains over the work of the [independent] contractor." Id. Thus, the government need not not have exercised day-to-day control over Dela-Tek's operations to be held responsible for the plaintiffs' injuries. However, liability will attach if the government negligently exercised whatever control over Dela-tek's operations that it had. Id. at 12, 13. The question whether the government owed a duty to Dela-tek's employees is one of law, id. at 8, reviewable by this court de novo. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991). The question whether the government breached its duty is one of fact. Id. at 10.
 
 
 28
 Clearly the government had a duty of care to the employees of Dela-Tek. The government's contract with Dela-Tek obligated the Department of Defense to ensure that Dela-Tek complied with certain safety standards. Specifically, the contract required the government to perform periodic safety inspections at the Coolidge munitions plant; to timely warn Dela-Tek of any failure to adhere to the safety standards and of the consequences that would entail; and to take remedial measures, including ceasing performance under the contract, if Dela-Tek failed to bring its operations into compliance with the safety standards. The issue, however, is whether the government breached this duty. We agree with the district court's factual conclusion that it did not. The government inspected the Coolidge plant on several occasions, warned Dela-Tek that it was not in compliance with the contract's safety requirements, and ultimately declined to renew its procurement relationship with the company.
 
 
 29
 The plaintiffs' citation to Welker v. Kennecott Copper Co., 403 P.2d 330 (Ariz.App. 1965), and Fluer Corp. v. Sykes, 413 P.2d 270 (Ariz.App. 1966), is not helpful. In both of those cases the employer of the independent contractor exercised substantially more control over the activities of the contractor. More importantly, Lewis makes clear that the basis upon which the employer was held liable for harm to the contractor's employees - the exercise of day-to-day control - is no longer the sine qua non of section 414 liability in Arizona. The Eighth Circuit's decision in McMichel v. United States, 751 F.2d 303 (1985) is unpersuasive for the same reasons.
 
 
 30
 We agree instead with the other federal courts that have held that the government's retention of a contractual obligation to ensure compliance with safety rules does not open the dorr to section 414 liability. See Bloom v. Waste Management, Inc., 615 F.Supp. 1002 (E.D. Pa. 1985), aff'd, 800 F.2d 1131 (3d Cir. 1986); Lathers v. Penguin Indus., Inc., 687 F.2d 69 (5th Cir. 1982). In both of those cases the plaintiffs unsuccessfully sought to hold the government liable for harm to a contractor's employees where the government undertook obligations to perform activities very similar to those mandated by the Dela-Tek contract. In fact, Arizona law post-Lewis adopts the approach of these federal decisions:
 
 
 31
 Comment (c) [to section 414] does not say than a[n] [employer of an independent contractor] must control the day-to-day details of the [independent] contractor's work in order to be subject to liability. . . . Comment (c) suggests that if the employer reserves and exercises only the right to inspect the contruction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject it to liability.
 
 
 32
 825 P.2d at 12 (quoting Moloso v. State, 644 P.2d 205, 211 (Alaska 1982) (citations omitted)) (emphasis in original).
 
 
 33
 Even were we to hold that the government breached its duty to Dela-Tek's employees, however, we would still affirm the district court's judgment. See, e.g., Marino v. Vasquez, 812 F.2d 499, 508 (9th Cir. 1987) (court of appeals may affirm on any grounds with support in the record). Plaintiffs have failed to demonstrate causation between the alleged breach and the injuries suffered by Antone and Aguirre. Antone read the employee manual, which discussed safety rules, and saw a safety demonstration by his supervisor. In addition, Aguirre and Antone were aware of the earlier accident that injured one of their co-workers. Thus, both men knew that they were to use the carbon scraper when cleaning the mixing apparatus. This knowledge would lead any reasonable person to conclude that use of a metal screwdriver was improper and even dangerous. There is no evidence in the record to indicate that the admittedly messy conditions and lax compliance with safety procedures at the Dela-Tek plant caused the accident at issue here.
 
 
 34
 Plaintiff next argues that the district judge should have refused to grant summary judgment in favor of the government because another judge of the same district declined to grant a similar motion in a different case arising from a separate accident at the same Dela-Tek munitions plant.[6] Plaintiffs' theory must be rejected because there is no constitutional or any other requirement that a district judge adhere to the rulings of another judge of the same court. Starbuck v. City and County of San Francisco, 556 F.2d 450, 457 n. 13 (9th Cir.1977); see also Willner v. Budig, 848 F.2d 1032, 1035 (10th Cir.1988) (per Wright, Alarcon, and Hall, JJ., sitting by designation), cert. denied, 488 U.S. 1031 (1989); Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1371 & n. 7 (3d Cir.1991).
 
 
 35
 Plaintiffs alternatively rely upon the rule of "intra-court comity." That rule was aptly summarized by Judge Selya in Fricker v. Town of Foster, 596 F.Supp. 1353 (D.R.I.1983):
 
 
 36
 While the judges of a unified federal district court are not constitutionally or legally bound to march in lockstep, the seeds of chaos are sown if a single court prances off in sharply conflicting directions. Lawyers and litigants in such circumstances have little hope of achieving the predictability of results toward which simplification of the judicial process is necessarily targeted. Thus, absent unusual or exceptional circumstances, judges of coordinate jurisdiction within a jurisdiction should follow brethren judge's rulings.
 
 
 37
 Id. at 1356 (citing United States v. Anaya, 509 F.Supp. 289, 293 (S.D.Fla.1980) (en banc), aff'd sub nom., United States v. Zayas-Morales, 685 F.2d 1272 (11th Cir.1982)); see also Thompson v. Waynesboro Area School Dist., 673 F.Supp. 1379, 1386 n. 5 (M.D.Pa.1987).
 
 
 38
 Here, invocation of the rule does not help plaintiffs, because it is advisory only. See Lee v. China Airlines, Inc., 669 F.Supp. 979, 981 (C.D.Cal.1987). Since Judge Hardy correctly decided that no genuine issue of material fact as to the government's control over the operations at Dela-Tek existed, he was not bound to withhold summary judgment on the basis of a fellow judge's refusal to grant the government similar relief in a different case presenting similar facts.[7] See id. (a judge may depart from the holding of a brother judge of the same district if he is convinced through independent analysis that the holding of his colleague is incorrect).
 
 CONCLUSION
 
 39
 The judgment of the district court is AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 40
 I dissent. The narrow reading of section 414 employed by the majority is inconsistent both with Arizona case law and with decisions by federal courts applying the law of other states that have adopted section 414. Under the test set forth in section 414, it is clear that the government retained sufficient control over the manufacturing process at Dela-Tek to subject it to liability for plaintiffs' injuries.
 
 
 41
 I strongly disagree with the majority's statement that the three cases on which its holding rests are "factually indistinguishable" from the case before us. Each of those cases falls squarely within the black-letter exclusions from liability listed in comment c to section 414. In Cordova v. Parrett, 703 P.2d 1228 (Ariz.App.1985), the employers, mobile home owners, simply told the contractor where they wanted the mobile home located. Id. at 1230. They did not retain any "degree of control", Restatement (Second) of Torts § 414 cmt. c, over the manner in which the move itself was accomplished. In Koepke v. Carter Hawley Hale Stores, Inc., 682 P.2d 425 (Ariz.App.1984), the supervisory employee's duties were limited to "inspect[ing] [the] progress", Restatement (Second) of Torts § 414 cmt. c, of the remodeling work and placing "warning signs to customers and barricades around construction areas," 682 P.2d at 430. The latter function, while indisputably related to safety, was purely reactive and did not entail any control over the manner in which the remodeling work was performed. Finally, in Martinez v. Asarco Inc., 918 F.2d 1467 (9th Cir.1990) (per curiam), Asarco employees conducted a tour of the smelter for the contractor's safety personnel, id. at 1469, and recommended safety procedures "which need not necessarily be followed," Restatement (Second) of Torts § 414 cmt. c; see 918 F.2d at 1467.
 
 
 42
 By contrast, under the test stated in comment c to section 414, the government retained significant control over the details of the manufacturing process at Dela-Tek. The government did not "ha[ve] merely a general right to ... inspect" Dela-Tek's plant for compliance with the DoD Contractor's Manual, Restatement (Second) of Torts § 414 cmt. c, but it was also authorized to bring safety problems to the attention of Dela-Tek's management for corrective action. The government's authority was not limited "to mak[ing] suggestions or recommendations which need not necessarily be followed" regarding those safety problems, id.; rather, it was contractually empowered to mandate necessary corrective measures. In particular, the government was required to ensure that Dela-Tek employees used non-sparking tools when working with explosive materials. And the government did not "ha[ve] merely the right ... to prescribe alterations and deviations," id.; it also had the right to set deadlines for the implementation of corrective measures and to ensure that Dela-Tek met those deadlines. In summary, under the contract between the government and Dela-Tek, Dela-Tek was "not entirely free to do the work in [its] own way." Id. The condition precedent for the rule of liability set forth in section 414 is therefore met.
 
 
 43
 Of the cases cited by the majority, the one most similar to the case before us is McMichael v. United States, 751 F.2d 303 (8th Cir.1985), in which the court found that the government had retained control over the manner and details of the contractor's work. The court listed five factors that contributed to its conclusion, three of which are present here:
 
 
 44
 1) the hiring of an independent contractor to perform ultrahazardous work; 2) promulgation of detailed safety requirements and incorporation of them into the contract; 3) express reservation of continuous inspection authority to ensure compliance with these requirements; 4) the continuous presence of three government inspectors on the job for the explicit purpose of insuring compliance with safety and quality requirements; and 5) the failure to perform the required inspections or to take action when violations were observed.
 
 
 45
 751 F.2d at 309-10. The fact that the government's contractual authority to inspect Dela-Tek's munitions plant was quarterly rather than continuous does not, in my view, require a different result here than in McMichael. Where the government has incorporated detailed safety requirements into a contract and has reserved the authority to mandate compliance with those requirements, to allow it to evade liability for negligent failure to ensure compliance by the simple expedient of periodic rather than continuous inspection would frustrate the intent of section 414. That section makes clear that the "degree of control" required for liability is not a function of the frequency of inspection--or indeed of the authority to inspect at all--but rather of the particularity with which the work is prescribed--the extent to which the contractor "is not entirely free to do the work in his own way."
 
 
 46
 The remaining federal cases cited by the majority are not to the contrary. In Bloom v. Waste Management, Inc., 615 F.Supp. 1002 (E.D.Pa.1985), aff'd, 800 F.2d 1131 (3d Cir.1986), the United States escaped liability because the employee assigned to the job site was merely responsible for monitoring the progress of the contractor's work. The fact that the employee felt that he had "a general right to order the work stopped," Restatement (Second) of Torts § 414 cmt. c, "if he perceived a life-threatening hazard," 615 F.Supp. at 1008, did not constitute retention of control within the meaning of section 414.
 
 
 47
 As to Lathers v. Penguin Indus., Inc., 687 F.2d 69 (5th Cir.1982), the majority's conclusion that that case presents "factually analogous circumstances" is quite simply irrelevant. Texas, in which the incident at issue in Lathers occurred, did not adopt the Restatement version of the rule set forth in section 414 until 1985. Redinger v. Living, Inc., 689 S.W.2d 415, 418 (Texas 1985). Accordingly, whether or not the facts of Lathers are "analogous", that case may not serve as the basis for a refusal to impose liability upon the United States here.
 
 
 48
 As in McMichael, the government's promulgation of detailed safety requirements and its express reservation of authority to mandate compliance with those requirements constituted retention of control over the manufacturing process at Dela-Tek within the meaning of section 414. Accordingly, plaintiffs are entitled to the opportunity to demonstrate that the government failed to exercise that control with the reasonable care required by law, and that the government's negligence caused their injuries. The majority's refusal to allow them to do so is inconsistent with the provisions of the Restatement of Torts, the requirements of Arizona law, and the mandate of the Federal Tort Claims Act.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The contract provided as follows:
 
 
 **
 The Contracting Officers shall not reference in the schedule of the contract ammunition and explosive safety publications of DoD components in their entirety. Contracting Officers shall select and identify in the schedule of the contract applicable paragraphs or portions of such publications
 
 
 [2]
 Under the Federal Tort Claims Act the court must apply the law of the state where the allegedly tortious behavior occurred. See 28 U.S.C. § 1346(b); Molsbergen v. United States, 757 F.2d 1016, 1020 (9th Cir.), cert. dismissed, 473 U.S. 934 (1985)
 
 
 [3]
 As a general rule, the United States cannot be held liable under the FTCA for the negligence of an independent contractor. See United States v. Orleans, 425 U.S. 807 (1976); Letnes v. United States, 820 F.2d 1517 (9th Cir.1987). In this case, the plaintiffs argue that the government itself was negligent in failing to enforce the safety provisions in the procurement contract and in failing to adequately supervise its contractor in the performance of the contract
 
 
 [4]
 Arizona courts follow the Restatement of the Law in the absence of specific authority to the contrary. See, e.g., Tamsen v. Weber, 166 Ariz. 364, 367, 802 P.2d 1063, 1066 (Ariz.App.1990)
 
 
 [5]
 It is clear that the Lewis court's interpretation of section 414 applies to an employer of an independent contractor. See Manhattan-Dickman Constr. Co. v. Shawler, 558 P.2d 894, 898 (Ariz. 1976); Weler v. Kennecott Copper Co., 403 P.2d 330, 340 (Ariz.App. 1965)
 
 
 [6]
 In that case, McAfee v. United States, No. CIV-87-2231-PHX-EHC, the plaintiff was injured when he stuck a tool into a moving granulating machine and suffered flash-fire burns
 
 
 [7]
 Plaintiffs argue that the discretionary function exception is not a defense to this FTCA action. However, the government declines to raise this issue in its brief, except to comment that the district court's judgment did not rest upon that theory. Accordingly, we need not, and do not, address the merits of that argument