665 P.2d 580

**BROADWAY REALTY & TRUST, INC., an Arizona corporation, Plaintiff/Appellant/Cross Appellee,**

v.

**Theodore B. GOULD, as General Partner of the Great Western Bank Building Limited Partnership, Defendant/Appellee/Cross Appellant.**

**No. 2 CA–CIV 4500.**

Court of Appeals of Arizona, Division 2.

March 15, 1983.

Rehearing Denied May 2, 1983.

Review Denied June 14, 1983.

Chandler, Tullar, Udall & Redhair by Thomas Chandler, Tucson, for plaintiff/appellant/cross appellee.

Schorr, Leonard & Felker, P.C. by Franklin O. Eldridge, Tucson, for defendant/appellee/cross appellant.

OPINION

HOWARD, Chief Judge.

A real estate broker and the owner of a commercial building entered into a written contract which stated, inter alia:

"In the event the property is sold by owner, owner agrees to pay commissions to manager pursuant to and in accordance with the local Real Estate Board Commission Schedule (or, if none, *the going rate in the area of the property for commissions for comparable transactions*)." (Emphasis added.)

Does the agreement satisfy the Statute of Frauds, A.R.S. § 44–101(7)? We hold that it does not.

On or about November 17, 1976, Broadway Realty & Trust, Inc. (BRAT), an Arizona corporation licensed as a real estate broker, with Joseph Cesare the corporation officer designated to act as broker, entered into an exclusive ten-year leasing and management agreement with Gould concerning the Great Western Bank Building in Tucson. The agreement contained the language in issue.

On October 1, 1979, Gould sold the building for $14,500,000. Gould refused to pay a commission to BRAT, which then sued for the commission and for lost profits as a result of Gould's breach of the management and leasing agreement. The case was tried to the court sitting without a jury which, after making findings of fact and conclusions of law, refused to award any sums for a broker's commission but awarded BRAT $440,517.07 for breach of the management and leasing commission contract, $19,212.07 of which was for money earned prior to Gould's breach of the contract. Gould has cross-appealed, contending that the trial court erred in awarding BRAT any sums in excess of $19,212.07.

## THE APPEAL

■ A.R.S. § 44–101 provides in pertinent part:

"No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

\*   \*   \*   \*   \*   \*

7. Upon an agreement authorizing or employing an agent or broker to purchase or sell real property . . . for compensation or a commission."

Since the evidence below discloses that there was no local real estate board commission schedule, the question is whether the statute of frauds is satisfied when the parties agree that the commission shall be the "going rate." In the case of *Gray v. Kohlhase,* 18 Ariz.App. 368, 502 P.2d 169 (1972), we dealt with a contract in which the amount of commission was left blank. There we stated:

"A memorandum on which an action by a real estate broker to recover commission is based must contain the terms and conditions of the promise sought to be enforced. [citations omitted.] A statement of the compensation or commission to be paid is a vital part of the contract and unless there is some memorandum in writing stating the amount of the commission signed by the person to be charged or his agent, the contract cannot be enforced. [citations omitted.]

\*   \*   \*   \*   \*   \*

A memorandum, in order to satisfy a contract within the Statute of Frauds, must state the terms and conditions of all the promises constituting the contract and any deficiency in this regard cannot be supplied by parol. [citation omitted.] The instrument involved in *Oregon Home Builders v. Crowley,* 87 Or. 517, 170 P. 718, reh. den. 87 Or. 536, 171 P. 214 (1918) was held sufficient to satisfy the Statute of Frauds, but the court stated: 'It is true that the writing must state the amount of the commission agreed to be paid to the broker, but it is also true that this requirement is predicated upon the fact that the amount of the commission agreed upon constitutes one of the terms of the contract which must be in writing: . . . Subdivision 8 [the Oregon counterpart of our A.R.S. § 44–101(7)] was designed as a remedy for a twofold evil: (1) Brokers claiming commissions when they had never been authorized to sell; and (2) brokers claiming excessive rates although authorized to sell. The conclusion . . . ,

that the writing must state the amount or rate of commission to be paid, is justified by the history and purpose of the statute.' 170 P. at 721–722.

We hold, therefore, that the memoranda relied upon by appellees were insufficient to satisfy the Statute of Frauds for lack of an essential element, i.e., the *amount of* commission. Such deficiency cannot be remedied by resort to parol evidence, [citation omitted.], nor is parol evidence available to supply a missing term by labeling an agreement 'ambiguous.' [citation omitted.]" (Emphasis in original)

A provision for the payment of the "usual", "regular", or "legal rate of" commission has been deemed insufficient to meet the requirements of the statute of frauds. See *Hueth v. Stevenson,* 100 N.J.L. 1, 124 A. 773 (1924); *Buratti & Montandon v. Tennant,* 147 Tex. 536, 218 S.W.2d 842 (1949); and see Annot., 9 A.L.R.2d 747 § 20 at 783. The provision in the agreement here, the "going rate", is the same as "regular" or "usual" and we hold that it does not satisfy the statute of frauds. Appellant has cited cases where the agreement stipulated that the amount of commission was that fixed by the local realty board. Such a provision has been generally held to satisfy the statute of frauds. See *Stockberger v. Zane,* 73 Ind.App. 4, 125 N.E. 65 (1919); *Lawson v. Holloman,* 238 S.W.2d 987 (Tex.Civ.App. 1951); *Graham v. Guetzkow,* 177 Wis. 259, 187 N.W. 982 (1922); see also, Annot., 9 A.L.R.2d 747 § 21 at 784. But these cases are not factually apposite to the case sub judice.

## THE CROSS–APPEAL

The contract between the parties was to last until the year 1986 and gave BRAT a management commission and leasing commission, both of which were based upon income received from the tenants of the building. This necessitated a determination of the gross income for each year until 1986, less the overhead expenses which it would cost BRAT to generate the income and less a reduction of the amount to present worth, which necessitated also the finding of a proper discount rate.

Gould contends that BRAT did not carry its burden of proving the amount of projected loss of profits since its evidence was based upon conjecture and speculation. We do not agree. Once the right to damages has been established, uncertainty as to the amount of damages will not preclude recovery. *Nelson v. Cail,* 120 Ariz. 64, 583 P.2d 1384 (App.1978). Yet there must be a reasonable basis in the evidence for the trier of fact to fix compensation when a dollar loss is claimed. *Nelson v. Cail,* supra. Expert witnesses testified for both parties. One of the big disputes was the determination of the vacancy rate. The trial court, in its findings of fact, made specific findings well within the range of the expert testimony. The trial court was not obligated to make its findings consistent with the testimony of any one particular witness but was free to pick and choose among testimony of all the expert witnesses and arrive at a determination of the amount of lost profits. That is what the record shows the trial court did here. The testimony of appellant's expert witnesses was no more speculative than that of appellee's. We find no error in the trial court's conclusion.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.