825 P.2d 5

**Anthony E. LEWIS, Plaintiff–Appellee,**

v.

**N.J. RIEBE ENTERPRISES, INC., a corporation, Defendant–Appellant.**

No. CV–91–0076–PR.

Supreme Court of Arizona, En Banc.

Feb. 13, 1992.

---

**386**

Anderson Law Offices by Michael C. Anderson, Bullhead City, and The Langerman Law Offices by Richard W. Langerman, and Amy G. Langerman, Phoenix, for plaintiff-appellee.

Copple, Chamberlin & Boehm, P.C. by Thomas J. Chamberlin, and Scott E. Boehm, Phoenix, for defendant-appellant.

## OPINION

CORCORAN, Justice.

Plaintiff, Anthony E. Lewis (Lewis), sued *to recover damages for injuries he sus*tained during the construction of an addition to Mohave High School in Bullhead City, Arizona. Lewis claimed that his injuries were caused by the negligence of N.J. Riebe Enterprises, Inc. (Riebe), the general contractor for the project. Following trial, the jury returned a verdict in favor of Lewis. On appeal, the court of appeals reversed, holding that, as a matter of law, Riebe owed no duty of care to Lewis. We granted review to examine numerous negligence principles as they relate to a general contractor's duty to subcontractors' employees. Rule 23, Arizona Rules of Civil Appellate Procedure. We have jurisdiction pursuant to Ariz.Const. art. 6, § 5(3) and A.R.S. § 12–120.24. For the reasons stated below, the opinion of the court of appeals is vacated, 170 Ariz. 207, 823 P.2d 74, and the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

In May 1983, Riebe entered into a construction contract with the high school district to remodel and add on to Mohave High School. Riebe employed various subcontractors for the project, including Mel Garges Carpentry (Garges). Garges employed Lewis.

One of Garges' carpentry projects at the school was to install a slightly-pitched roof constructed of beams placed at 4–foot intervals with $4' \times 8'$ sheets of plywood nailed to the beams. After the plywood was in place, Riebe's superintendent, Michael Smith (Smith), advised Garges that the roof was improperly installed and that it had to be redone because Garges did not install the H-clips required by the project specifications. Garges' owner met with Lewis and two other Garges carpenters to decide how best to install the H-clips. After this meeting, Lewis and another carpenter, Gary Clinton (Clinton), began removing the nails from each row of plywood, installing the H-clips, and renailing the plywood.

On the second day of the H-clip installation project, Smith and two Garges carpenters discussed a quicker method of dislodging the plywood by banging the plywood from underneath with $2'' \times 4''$s. Although no Garges supervisor was present at the

job site to instruct them,[1] Garges employees began dislodging the plywood using the $2 \times 4$ method while Lewis and Clinton remained on the roof. Smith observed this practice and instructed other subcontractors to leave the work space under the roof because he was concerned about their safety.

After a few rows of plywood had been dislodged, Lewis and Clinton installed H-clips and renailed the plywood to the beams. Because the plywood was dislodged faster than Lewis and Clinton could install the H-clips and renail the plywood, numerous sheets of dislodged plywood were left lying loose on top of the beams. Lewis stepped on a piece of this loose plywood and fell through the roof onto the concrete floor below. Lewis seriously fractured his wrist in the fall.

In its standard American Institute of Architects (AIA) contract with the school district, Riebe assumed sole responsibility for supervising and coordinating all aspects of the construction project. Riebe agreed to be responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the work," and to "take all reasonable precautions for the safety of, and [to] provide all reasonable protection to prevent damage, injury or loss to ... all employees on the work...." Riebe also agreed to appoint a safety director "whose duty shall be the prevention of accidents." Smith was Riebe's designated safety director.

Lewis sued Riebe for its negligent failure to provide a safe workplace. Riebe moved for summary judgment, twice moved for a directed verdict, and moved for a new trial, each time arguing that because Lewis was an employee of an independent contractor, Riebe owed him no

duty of care. The trial court denied the motions. The jury returned a verdict for $225,000 in favor of Lewis and found that Lewis was 35% at fault.[2] The court of appeals reversed, holding that as a matter of law Riebe owed Lewis no duty of care.

## DISCUSSION

### A. The Duty Issue

We granted review to determine (1) whether a general contractor owes a duty of care to employees of a subcontractor, and, if so, (2) the scope of that duty.

#### 1. The Duty Owed by a General Contractor

 Whether a general contractor owes a duty of care to the employees of a subcontractor is a question of law for the court. See Markowitz v. Arizona Parks Bd., 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985) (issue of duty one of law for the court). The court of appeals recognized this rule and held that Riebe owed no duty of care to Lewis as a matter of law. The court of appeals reached this conclusion by examining the details of Riebe's control over the work at the construction site and finding that Riebe did not retain sufficient control over Garges' work to subject Riebe to liability for Lewis' injuries under Restatement (Second) of Torts § 414 (1965). Lewis v. Riebe Enter., Inc., 170 Ariz. 207, 210, 823 P.2d 74, 78 (App.1990).

We believe the court of appeals' reliance on § 414 to determine whether Riebe owed Lewis a duty of care is misplaced. Section 414 provides:

**Negligence in Exercising Control Retained by Employer.**

[A general contractor] who entrusts work to an independent contractor, but

---

1. The evidence on this point is contradictory. Lewis and Clinton testified that no Garges foreman was present at the construction site on the day of Lewis' accident. However, Michael George, a Garges foreman, testified that he was present at the job site the day of Lewis' accident, although his testimony may be interpreted to be he was present at the job site after Lewis' accident. We must view this evidence in the light most favorable to sustaining the jury verdict. *Polk v. Koerner*, 111 Ariz. 493, 494, 533 P.2d 660,

661 (1975). In so doing, we consider the evidence to show that no Garges foreman was present at the job site before or at the time of Lewis' accident.

2. The record is devoid of any attempt by Riebe to name Garges or any other entity as a nonparty at fault under A.R.S. § 12–2506. *See Dietz v. General Electric Co.*, 169 Ariz. 505, 821 P.2d 166, 172 (1991).

who retains the control of any part of the work, is subject to liability for physical harm to others *for whose safety the employer owes a duty to exercise reasonable care*, which is caused by his failure to exercise his control with reasonable care.

(Emphasis added.) Rather than addressing the threshold question of whether a duty *exists*, we believe § 414 addresses the *scope* of a general contractor's duty once that duty is found to exist. In fact, § 414, by its own language, subjects a general contractor to liability only if the general contractor "owes a duty [to the person injured] to exercise reasonable care." Thus, before considering § 414, we turn to well-established Arizona case law to determine whether Riebe owed Lewis any duty of care.

This court has previously held that a general contractor has a duty to provide a safe workplace for the employees of subcontractors.

> The general rule which defines the common law obligation of the general contractor to the employee of the subcontractor *imposes upon the former the obligation to exercise ordinary care to furnish the latter with a reasonably safe place in which to work* or, if there is danger attendant upon his work which arises from conditions that are not obvious, to give the employee reasonable warning of such danger.

*Manhattan-Dickman Constr. Co. v. Shawler*, 113 Ariz. 549, 553, 558 P.2d 894, 898 (1976) (emphasis added), *quoting Jean v. Collins Constr. Co.*, 215 Cal.App.2d 410, 416–17, 30 Cal.Rptr. 149, 153 (1963) (citations omitted); *see also Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 417, 420, 778 P.2d 1312, 1313, 1316 (App.1989) (affirming jury instruction stating general contractor has duty to provide employees of subcontractors with reasonably safe work site); *cf.* 3 J.D. Lee & Barry A. Lindahl, *Modern Tort Law* § 43.54 (rev. ed. 1990) (general contractor who coordinates work of various subcontractors owes duty to workers to keep premises safe). We hold, therefore, that Riebe *did* owe a duty

of care to Lewis—a duty to provide Lewis with a reasonably safe place to work.

2. *The Scope of a General Contractor's Duty*

■ As stated above, we believe that § 414 establishes the scope of a general contractor's duty of care. Although a general contractor has a general duty to provide a reasonably safe workplace for the employees of subcontractors, the scope of this duty extends only as far as the amount of control the general contractor retains over the work of the subcontractor. *See Mason v. Arizona Public Serv. Co.*, 127 Ariz. 546, 551, 622 P.2d 493, 498 (App.1980) ("The duty to provide a safe place to work generally extends no further than the control retained by the [general contractor]."); *Kelley v. Wright Constr. Co.*, 90 Wash.2d 323, 330, 582 P.2d 500, 505 (1978); *Prosser and Keeton on Torts* § 71, at 510 (5th ed. 1984) (so far as a general contractor retains control over any part of the work, he must exercise reasonable care). This is the rule set out in § 414.

This court previously adopted § 414 as the law of Arizona and held that its protection extends to the employees of subcontractors. *See Matsumato v. Arizona Sand & Rock Co.*, 80 Ariz. 232, 236, 295 P.2d 850, 853 (1956) (applying § 414 to third persons); *Manhattan–Dickman*, 113 Ariz. at 553, 558 P.2d at 898 (applying § 414 to independent contractors); *see also Welker v. Kennecott Copper Co.*, 1 Ariz. App. 395, 405, 403 P.2d 330, 340 (1965) (holding that protection provided by § 414 applies to employees of independent contractor). Under § 414, then, Riebe's duty of care extended as far as the scope of its retained control over the construction of the Mohave High School addition, and Riebe is liable for any injury caused by its negligent exercise of that retained control.

In a long line of cases, the court of appeals previously treated the § 414 retained control issue as a question of law for the court. *See generally, e.g., Mason v. Arizona Public Serv. Co.*, 127 Ariz. 546, 622 P.2d 493 (App.1980); *Sullins v. Third & Catalina Constr. Partnership*, 124 Ariz. 114, 602 P.2d 495 (App.1979); *Pruett v.*

*Precision Plumbing, Inc.*, 27 Ariz.App. 288, 554 P.2d 655 (1976); *Chesin Constr. Co. v. Epstein*, 8 Ariz.App. 312, 446 P.2d 11 (1968); *Welker v. Kennecott Copper Co.*, 1 Ariz.App. 395, 403 P.2d 330 (1965). This approach was based on the presumption that without retained control, a general contractor owes absolutely no duty of care to employees of subcontractors. *See, e.g., Sullins*, 124 Ariz. at 120, 602 P.2d at 501. We reject this analysis and conclude that a general contractor has a general duty to provide employees of subcontractors with a reasonably safe place to work. In a case alleging general contractor liability under § 414, the scope of this duty is determined by the amount of control the general contractor retains over the subcontractor's work.

### 3. The Breach of a General Contractor's Duty of Care

 A general contractor must exercise with *"reasonable care"* any control it *retains* over a subcontractor's work. *Restatement (Second) of Torts* § 414 (1965) (emphasis added). Whether a general contractor exercised substandard care and thereby breached this duty is a *question of fact* for the fact finder. *See Flowers v. K–Mart Corp.*, 126 Ariz. 495, 497, 616 P.2d 955, 957 (App.1980) (question whether duty has been breached ordinarily question for jury), *citing Moore v. Maricopa County*, 11 Ariz.App. 505, 508, 466 P.2d 56, 59 (1970). Because the issue of breach of duty is linked inexorably with the question of whether a general contractor has "retain[ed] the control of any part of the work," § 414, we believe that the issue of retained control is also a *question of fact* which ordinarily should be left to the fact finder. *See Barker v. General Petroleum Corp.*, 72 Ariz. 187, 195, 232 P.2d 390, 395 (1951) ("[W]hat is or is not negligence is a question for the jury, especially where the standard [of] such duty is not fixed but variable."), *quoting Hughes v. Shanafelt*, 203 Okla. 80, 218 P.2d 350, 352 (1950); *see also Moloso v. State*, 644 P.2d 205, 212 (Alaska 1982) ("It is normally a question of fact for the jury to determine whether an employer of an independent contractor has

retained sufficient control so as to make the employer liable."); *Rabar v. E.I. du-Pont de Nemours & Co.*, 415 A.2d 499, 507–08 (Del.Super.1980); *Weber v. Northern Ill. Gas Co.*, 10 Ill.App.3d 625, 641, 295 N.E.2d 41, 49 (1973); *Corsetti v. Stone Co.*, 396 Mass. 1, 11, 483 N.E.2d 793, 798 (1985) ("Whether an employer has sufficient control over part of the work of an independent contractor to render him liable under § 414 is a question of fact for the jury."); *Dowell v. General Tel. Co.*, 85 Mich.App. 84, 94–95, 270 N.W.2d 711, 716 (1978); *Riggins v. Bechtel Power Corp.*, 44 Wash.App. 244, 252, 722 P.2d 819, 823 (1986) (nature and extent of general contractor's duty to subcontractor's employee a factual issue requiring determination by jury). This conclusion, however, does not prevent a trial court from granting summary judgment or a directed verdict in favor of either a worker or a general contractor if such action is appropriate under *Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000 (1990) (discussing standard for granting summary judgment or directed verdict). In this case, we believe the question of whether Riebe retained sufficient control over Garges' work to be held liable under § 414 for Lewis' injuries was appropriately a question of fact for the jury.

### B. The Sufficiency of the Evidence

 Because we find that Riebe owed a duty of care to Lewis, the breach of which is a jury question and depends upon the amount of control retained by Riebe, we now determine whether there was sufficient evidence to support the jury's verdict. In so doing, we view the evidence in the light most favorable to Lewis, the prevailing party at trial. *Polk v. Koerner*, 111 Ariz. 493, 494, 533 P.2d 660, 661 (1975); *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 279, 440 P.2d 105, 112 (1968). In addition, we give Lewis the benefit of every favorable inference which can be drawn from the evidence. *Atchison, T. & S. F. Ry. v. Parr*, 96 Ariz. 13, 16, 391 P.2d 575, 577 (1964). Viewed in this light, the evidence supports the jury's finding that Riebe both retained control over Garges'

work on the roof involving the removal and reinstallation of the plywood sheathing, and negligently exercised that retained control.

### 1. *Retained Control*

In order to be held liable under § 414, Riebe must have retained some measure of control not over the premises of the work site, but over the actual work performed by Garges. *Restatement (Second) of Torts* § 414 (1965). Both the provisions of Riebe's contract with the school district and Riebe's actual exercise of control over Garges' work are relevant considerations in determining whether Riebe retained such control over Garges' work. *Jones v. Chevron, Inc.*, 718 P.2d 890, 896 (Wyo.1986), *quoting Moloso v. State*, 644 P.2d 205, 211 (Alaska 1982) ("To determine whether the nature and extent of the control present is sufficient to impose liability, both the contractual provisions and the actual exercise of control are relevant."); *Chesin Constr. Co. v. Epstein*, 8 Ariz.App. 312, 315, 446 P.2d 11, 14 (1968) (court examined contract for evidence of retained control). We therefore examine each of these possible bases of liability.

### a. Riebe's Contract with the School Board

Lewis contends that Riebe retained control over Garges' work by contractually assuming the responsibility of maintaining safety at the job site. The court of appeals rejected this argument, holding that: (1) Riebe's contractual responsibility for safety "does not equate to the retention of control necessary to subject the general contractor to liability," *Lewis v. Riebe Enter., Inc.*, 170 Ariz. 207, 212, 823 P.2d 74, 79 (App.1990); and (2) "the right to ... prohibit or correct unsafe practices ... does not impose liability for an unsafe condition created by the subcontractor ... ," *Lewis*, 170 Ariz. at 212, 823 P.2d at 79. We do not find this reasoning persuasive.

The court of appeals has held consistently that "liability for [the] negligent exercise of retained supervisory powers can attach only when there is a showing that [the

general contractor *reserved] 'the right to exercise day-by-day control over the manner in which the details of the work are performed.'* " *Reber v. Chandler High School Dist.*, 13 Ariz.App. 133, 135, 474 P.2d 852, 854 (1970) (emphasis added), *quoting E.L. Jones Constr. Co. v. Noland*, 105 Ariz. 446, 456, 466 P.2d 740, 750 (1970). *See also, e.g., Lewis*, 170 Ariz. at 210, 823 P.2d at 77, *citing Reber*, 13 Ariz.App. at 135, 474 P.2d at 854; *Koepke v. Carter Hawley Hale Stores, Inc.*, 140 Ariz. 420, 425, 682 P.2d 425, 430 (App.1984), *citing German v. Mountain States Tel. & Tel. Co.*, 11 Ariz.App. 91, 95, 462 P.2d 108, 112 (1969); *Sullins v. Third & Catalina Constr. Partnership*, 124 Ariz. 114, 120, 602 P.2d 495, 501 (App.1979), *citing Reber*, 13 Ariz.App. at 135, 474 P.2d at 854; *German*, 11 Ariz.App. at 95, 462 P.2d at 112. We do not believe that such extensive control is required for liability under § 414.

The court of appeals apparently has based its narrow interpretation of § 414 on the language it has quoted from *Jones* concerning day-to-day control over the details of the subcontractor's work. However, we believe this reliance on *Jones* is misplaced because *Jones* did not address § 414. *Jones* involved the issue of a general contractor's *vicarious liability* for a subcontractor's negligence, not a general contractor's liability for its own negligence.

The court of appeals has also relied on comment (c) to § 414 for the proposition that a general contractor is subject to liability under § 414 only if it retains control over the subcontractor's method of doing the *details* of the work. *See, e.g., Lewis*, 170 Ariz. at 210, 823 P.2d at 77; *Cordova v. Parrett*, 146 Ariz. 79, 82, 703 P.2d 1228, 1231 (App.1985); *Mason v. Arizona Public Serv. Co.*, 127 Ariz. 546, 550, 622 P.2d 493, 497 (App.1980); *German*, 11 Ariz.App. at 94–95, 462 P.2d at 111–12. We believe that the court of appeals has also misinterpreted comment (c), which states:

In order for the rule stated in [§ 414] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has mere-

ly a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Comment (c) does *not* say that a general contractor must control the day-to-day details of a subcontractor's work in order to be subject to liability under § 414. Comment (c) merely suggests that

[i]f the employer reserves and exercises *only* the right to inspect the construction work to see that the contract specifications are met while the independent contractor controls how and when the work is to be done, there is probably not sufficient retained control to subject it to liability.

*Moloso v. State,* 644 P.2d 205, 211 (Alaska 1982) (citations omitted).

Moreover, it is important to note that we could not apply § 414 if we adopted the court of appeals' interpretation of the amount of retained control necessary to subject a general contractor to liability under that section because § 414 applies only if there is a general contractor/independent subcontractor relationship. Such a relationship does not exist if a general contractor exercises day-to-day control over the details of a subcontractor's work because

an independent contractor is one who ... contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the product or result of his work. This [relationship] stresses the lack of the right to control—not merely as to result, but also the manner, method and details of the work.

Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, 1 *American Law of Torts* § 4:23, at 677 (1983) (footnote omitted).

We believe that the appropriate test for retained control is found in comment (a) to § 414, which states that a general contractor

may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to ... others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in [§ 414] unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

Thus, if a general contractor assumes affirmative duties with respect to safety, it retains sufficient control to be held liable under § 414 for its negligent exercise of its safety responsibilities. *Moloso,* 644 P.2d at 211.

The court of appeals improperly disregarded the contractual relationship between Riebe and the school district as a factual basis supporting the jury's verdict. Therefore, we now turn to the question of whether there was sufficient evidence to support a jury finding that Riebe retained control over the safety aspects of the Mohave High School project.

Riebe's AIA contract with the school district contained the following pertinent provisions:

10.1 SAFETY PRECAUTIONS AND PROGRAMS

10.1.1 The Contractor *shall* be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.

10.2 SAFETY OF PERSONS AND PROPERTY

10.2.1 The Contractor *shall* take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

.1 all employees on the Work and all other persons who may be affected thereby ...

. . . .

10.2.6 The Contractor *shall* designate a responsible member of his organization

at the site whose *duty* shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and the Architect.

(Emphasis added.)[3] These contractual provisions not only allowed Riebe to retain control over Garges' work by providing it with the authority to stop any work practice it considered unsafe, but also imposed upon Riebe an affirmative duty to control Garges' work methods in order to insure the safety of everyone at the work site. This *right* to control the work, even if unexercised, meets the criteria for liability under § 414. *See, e.g., Smith v. United States,* 497 F.2d 500, 512 (5th Cir.1974); *Summers v. Crown Constr. Co.,* 453 F.2d 998, 1000 (4th Cir.1972); *Kirby Forest Indus., Inc. v. Kirkland,* 772 S.W.2d 226, 228 (Tex.App.1989); *Kelley v. Wright Constr. Co.,* 90 Wash.2d 323, 331, 582 P.2d 500, 505 (1978). Thus, in contrast to the court of appeals, we believe that the safety responsibility undertaken by Riebe in its contract with the school district constitutes a sufficient retention of control over Garges' work to subject Riebe to liability under § 414. *See Manhattan–Dickman Constr. Co. v. Shawler,* 113 Ariz. 549, 552–53, 558 P.2d 894, 897–98 (1976) (contractual provision stating "the Contractor shall take all necessary precautions for the safety of employees on the work ..." provided jury basis for finding liability under § 414); *Fluor Corp. v. Sykes,* 3 Ariz.App. 211, 214–15, 413 P.2d 270, 273–74 (1966) (pamphlet stating general contractor had prime responsibility for safety sufficient evidence of retained control to allow issue of negligent exercise of retained control to go to jury); *Kelley,* 90 Wash.2d at 328–31, 582 P.2d at 503–05 (identical contractual language giving general contractor supervisory functions sufficient to establish general contractor's control over work).

■ We also reject the court of appeals' conclusion that a general contractor's negligent exercise of its right to prohibit or correct a subcontractor's unsafe work practice does not impose liability on the general contractor for an unsafe condition created by a subcontractor which injures an employee of that subcontractor. Such an interpretation of § 414 negates any contractual safety responsibility assumed by a general contractor. The policy behind the law of torts is not only to compensate victims, but also to reduce the risk of injury. *Prosser & Keeton on Torts* § 4, at 20, 25 (5th ed. 1984). Because the general contractor coordinates the work of various subcontractors at a work site, it is in the best position to provide for the safety of all workers and to reduce the risk of injury at the work site. And, as the court of appeals has previously stated,

> [t]he division of control, particularly in the area of safety precautions, may have some tendency to cause accidents.... "Uncertainty regarding the division of responsibility for safety precautions between subcontractors and general contractors not only produces litigation over accidents that have happened, but is probably a prime cause of their happening in the first place."

*Welker v. Kennecott Copper Co.,* 1 Ariz. App. 395, 405, 403 P.2d 330, 340 (1965), *quoting Wright v. Belt Assoc., Inc.,* 14 N.Y.2d 129, 136, 198 N.E.2d 590, 592–93, 249 N.Y.S.2d 416, 420 (1964). Therefore, we hold that if a general contractor contractually assumes the responsibility for safety at a work site, it is liable for any injury resulting from its negligent exercise of that responsibility as long as the general contractor "[knew]" or by the exercise of reasonable care should [have known] that the subcontractors' work [was being done in a dangerous manner], and ha[d] the opportunity to prevent it by exercising the power of control which he ... retained in himself." *Restatement (Second) of Torts* § 414 comment (b) (1965).

In light of the foregoing, we believe that the jury could have found that Riebe contractually assumed responsibility for Lew-

---

3. Lewis does not contend that he is a third-party beneficiary to this contract. Therefore, we do not consider whether these contract provisions provide protection for Lewis as a third-party beneficiary.

is' safety and that Riebe retained the control necessary to carry out its responsibility to Lewis. There is sufficient evidence to support the jury's finding that Riebe retained sufficient control over Garges' work to subject it to liability under § 414.

b. Riebe's Actual Exercise of Control

■ There is also sufficient evidence to support a jury finding that Riebe actually controlled the roof construction on the day of Lewis' accident, a finding that establishes retained control and subjects Riebe to possible liability under § 414. Lewis testified at trial that Smith discussed the 2 × 4 method of removing the plywood sheathing from the roof with Garges employees:

Q. Was there ... a general conversation where the dislodging of the plywood was discussed that you're aware of because you were present?

A. Yes.

....

Q. Did Mr. Smith of N.J. Riebe participate in that conversation?

A. Yes, he did.

Q. Was it decided at that conversation to dislodge the sheathing by banging it from below with two-by-fours?

A. Yes, it was.

....

Q. You didn't hear Mike Smith say remove the plywood from underneath, did you?

A. He did not instruct me to remove the plywood underneath.

Q. You didn't hear him in that conversation say that, did you?

A. Yes, I did, I believe so.

In addition, Clinton, a Garges employee working on the roof with Lewis, testified that he believed Smith controlled the work performed by Garges' employees on the day of Lewis' accident because Garges' foreman was not present at the job site on that day:

Q. And the second day is when the two-by-fours were used to knock the sheathing loose?

A. Yes.

Q. Was that the date of the accident?

A. Yes.

Q. Was there a supervisor from Mel Garges Construction present that day?

A. No, there wasn't.

....

Q. Who was directing your activities on the day of the accident?

A. I couldn't say positively, but I would say that it would have to have been the superintendent from Riebe because the Garges foreman wasn't there, he was the general contractor on it for us, somebody would have to instruct us.

Because we must give Lewis the benefit of every favorable inference which can be drawn from this evidence, *Atchison, T. & S. F. Ry. v. Parr*, 96 Ariz. 13, 16, 391 P.2d 575, 577 (1964), we find that this evidence is sufficient to support a jury finding that Riebe actually controlled the method of removing the plywood sheathing on the day of Lewis' accident. Consequently, Riebe would be liable under § 414 if Smith did not exercise "his supervisory control with reasonable care so as to prevent the work *which he ... ordered to be done* from causing injury to others." *Restatement (Second) of Torts* § 414 comment (a) (1965).

In addition, Riebe actually exercised its retained safety authority on the day of Lewis' accident. Smith testified that he was responsible for the overall safety of the project and that he had the power to stop a subcontractor's work if he believed the work was being performed in a dangerous manner. Smith also testified that he instructed workers to leave the work space below the roof when the carpenters began loosening the plywood sheets because he believed the 2 × 4 method of removing the plywood was dangerous. By exercising his safety authority, Smith exhibited Riebe's retained control over Garges' work, and Riebe is liable under § 414 if Smith exercised his authority negligently. *See* § 414 comment (b).

2. *Negligent Exercise of Retained Control*

■ We have determined that there was sufficient evidence to support the jury verdict regarding Riebe's retention of control

under § 414. The only issue remaining concerning the jury's verdict is whether there is sufficient evidence to support the jury's finding that Riebe exercised its retained control negligently. Neither party addressed this issue, focusing instead on the issue of retained control. However, there is evidence of negligence in the record. Cecil Hickman, Lewis' expert witness, testified that under recognized industry safety standards, Lewis should not have. been "allowed to walk anywhere where the pieces of plywood were not adequately secured." The jury may have concluded either that Smith negligently instructed Garges' employees to use the 2 × 4 method or that Smith negligently failed to exercise his safety authority and prevent Lewis from working on the roof while the plywood was being removed with the 2 × 4 method. In either instance, we find that there is sufficient evidence in the record from which the jury may have concluded that Riebe negligently exercised its retained control.

### 3. Conclusion

We hold that there is sufficient evidence in the record supporting the jury's findings that Riebe retained control over Garges' work relating to the removal and reinstallation of the plywood sheathing, and that Riebe exercised its control negligently.

### C. Other Issues on Appeal

In view of our decision about the sufficiency of the evidence regarding Riebe's retained control and negligence, we do not need to address the constitutional issue raised by Lewis. However, we do address two issues raised by Riebe in the court of appeals that were not addressed by that court: (1) whether the trial court incorrectly submitted the case to the jury under the theory of comparative negligence rather than under the theory of contributory neg-

ligence; and (2) whether the trial court mistakenly admitted evidence of Lewis' lost wages. Under Rule 23(i), Arizona Rules of Civil Appellate Procedure, this court has the authority either to decide these issues or to remand them to the court of appeals for decision. In the interest of judicial economy, we choose to decide them.

### 1. Comparative Negligence vs. Contributory Negligence

■ Riebe contends that the trial court erred when it denied Riebe's motion in limine to try the case under contributory negligence rather than comparative negligence. This issue arises from the parties' stipulated dismissal of Lewis' original action against Riebe.

Lewis was injured on June 30, 1983, and his original complaint against Riebe was filed in March 1984. On August 30, 1984, the parts of Arizona's comparative negligence statute pertinent to this case, A.R.S. §§ 12–2501 to –2509, became effective. Pursuant to the parties' March 1985 stipulation, the trial court ordered the dismissal of Lewis' original action against Riebe without prejudice.[4] Lewis filed a new complaint against Riebe in April 1985. Lewis acknowledges that he dismissed and refiled his action against Riebe in order to take advantage of the new comparative negligence statute.

By its terms, the comparative negligence statute applies only to cases *filed* on or after August 30, 1984. Laws 1984, Ch. 237, §§ 3, 5. Lewis contends that he met this requirement by dismissing his original action and refiling it in April of 1985. We agree. The stipulated dismissal of Lewis' original action became final when the time for filing an appeal passed. *See Edgar v. Garrett,* 10 Ariz.App. 98, 101, 456 P.2d 944, 947 (1969), *citing Casa Grande Trust Co. v. Superior Court,* 8 Ariz.App. 163, 165, 444 P.2d 521, 523 (1968). Once the dismis-

---

**4.** The action was dismissed under the authority of Rule 41(a), Arizona Rules of Civil Procedure, which stated in 1985:

> [A]n action may be dismissed by the plaintiff without order of court ... at any time ... by filing a stipulation of dismissal signed by all parties who have appeared in the action....

> Unless otherwise stated in the ... stipulation, the dismissal is without prejudice....

Under the 1990 amendment to this rule, a stipulated dismissal becomes effective only upon entry of an order of the court. 165 Ariz. pp. XLVI–XLVII (1990).

sal was final, the trial court no longer had jurisdiction over the case. *See Crawford v. Crawford,* 20 Ariz.App. 599, 600, 514 P.2d 1050, 1051 (1973); *Spring v. Spring,* 3 Ariz.App. 381, 383, 414 P.2d 769, 771 (1966). In effect, the case no longer existed because " 'voluntary dismissal of a suit leaves the situation ... as though the suit had never been brought....' " *Spring,* 3 Ariz.App. at 383, 414 P.2d at 771, *quoting A.B. Dick Co. v. Marr,* 197 F.2d 498, 502 (2d Cir.1952). Lewis was then free to file a new complaint, which he did. Because the second case against Riebe was filed after the effective date of the comparative negligence statute, it met the statute's filing requirement.

Riebe argues, however, that even if Lewis met the requirements of the comparative negligence statute, the trial court should have granted Riebe's motion in limine because Riebe did not intend to allow Lewis to take advantage of the new statute. We find this argument to be without merit. The fact that parties are bound by their stipulations is well established in Arizona law. *E.g., State v. Sorrell,* 109 Ariz. 171, 173, 506 P.2d 1065, 1067 (1973), *quoting Gangadean v. Flori Inv. Co.,* 106 Ariz. 245, 248, 474 P.2d 1006, 1009 (1970); *Rutledge v. Board of Regents,* 147 Ariz. 534, 549, 711 P.2d 1207, 1222 (App.1985); *Pulliam v. Pulliam,* 139 Ariz. 343, 345, 678 P.2d 528, 530 (App.1984); *Harsh Building Co. v. Bialac,* 22 Ariz.App. 591, 593, 529 P.2d 1185, 1187 (1975). It was within the trial court's discretion to refuse to relieve Riebe from the terms of its stipulation, *Harsh Building Co.,* 22 Ariz.App. at 594, 529 P.2d at 1188, *quoting Los Angeles City School Dist. v. Landier Mgmt. Co.,* 177 Cal.App.2d 744, 752, 2 Cal.Rptr. 662, 665–66 (1960), and we do not believe the trial court abused its discretion.

Riebe argues that if Riebe had consented to Lewis' use of the comparative negli-

gence statute, the stipulation would have reflected that consent. However, Lewis' counsel avows that he discussed his intention to take advantage of the comparative negligence statute with Riebe's counsel before the stipulation was signed.[5] The stipulation does not refer to the comparative negligence issue; it simply states:

> The parties, by and through their respective counsel, hereby stipulate that the above-entitled action may be dismissed without prejudice with leave to refile.

> Parties further stipulate that all discovery of documents and all discovery completed by the parties in action No. 21734 shall be preserved and made a part of any amended or refiled action involving the alleged injury and occurrence as is generally set forth in the Complaint.

The trial court found that "the stipulation is just a plain vanilla stipulation to dismiss but preserving the discovery.... So, I'm going to leave it the way it is. This is [a] stipulation to dismiss, period." Because of the wording of the stipulation and the conflicting information about the parties' intentions, this decision was not an abuse of discretion.

Moreover, construing the stipulation in light of the surrounding circumstances, *see Brandt's Estate,* 67 Ariz. 42, 48, 190 P.2d 497, 501 (1948), we find it difficult to believe that Riebe consented to the dismissal without knowing that Lewis would be able to take advantage of the new statute. Many cases were dismissed and refiled in this same time period in order to take advantage of the new statute. *See, e.g., Quadrone v. Pasco Petroleum Co.,* 156 Ariz. 415, 752 P.2d 504 (App.1988). Riebe obviously contemplated that Lewis might refile his action because of the stipulation concerning the use of prior discovery. Even if Riebe somehow overlooked the consequences of its stipulation, we cannot con-

---

5. Lewis' brief in the court of appeals states: Appellee requested of Appellant's counsel permission to dismiss the action without prejudice for refiling under that comparative negligence law. The then counsel for Appellant ... agreed with Appellee's request.... It was [later] learned by Appellee's counsel that [ap-

pellant's counsel] had committed suicide and the matter had been transferred to present counsel.... When [present counsel] was apprised of the situation he agreed that if [previous counsel] had agreed to a stipulated dismissal, that he would abide by [previous counsel's] agreement, which he did.

clude that the trial court abused its discretion when it denied Riebe's motion in limine—a motion which was filed several years after the stipulated dismissal.

Riebe further argues that the trial court should have granted its motion in limine in light of *Cheney v. Superior Court,* 144 Ariz. 446, 698 P.2d 691 (1985), a case in which this court held that it was not an abuse of discretion for a trial court to refuse to dismiss a case so that it could be refiled under the comparative negligence statute. The *Cheney* decision was based on this court's conclusion that the loss of the right to plead contributory negligence as a defense is the loss of a substantial right. However, *Cheney* is distinguishable from the present case. In *Cheney,* the defendant preserved his right to assert contributory negligence by opposing the plaintiff's motion to dismiss. *See Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 141, 717 P.2d 434, 445 (1986). The trial court in *Cheney* also had the discretion to deny the plaintiff's motion to dismiss. Here, however, Riebe stipulated to the dismissal, and the dismissal was effective without the trial court's approval. *See* Rule 41(a), Arizona Rules of Civil Procedure; *Theriault v. Scottsdale Enter.,* 157 Ariz. 77, 78, 754 P.2d 1352, 1353 (App.1988) (stipulation of dismissal automatically dismisses claim without any action by trial court).

We find that the trial court did not err when it denied Riebe's motion in limine to submit the case to the jury under the theory of contributory negligence. By stipulating to the dismissal of Lewis' original action, Riebe lost its right to assert the defense of contributory negligence.

## 2. *Admission of Evidence of Lost Wages*

At trial, Lewis testified that the average journeyman carpenter in the Bullhead City area was generally unemployed about three months each year. Defense counsel objected to this testimony for lack of foundation. On cross examination, Lewis testified that his job with Garges was temporary, and defense counsel introduced Lewis' deposition testimony that he had been unemployed for 6 months before working for Garges on the Mohave High School project. Because of the contradiction between Lewis' statement that the average carpenter only worked about 9 months each year and Lewis' own personal work history, Riebe moved for a directed verdict on the issue of lost wages. The trial court denied the motion, and because of the court's denial, Riebe later tendered instruction 31 requiring that future damages be established with "reasonable probability." The trial court refused this instruction.

■ Although Riebe's argument on appeal is convoluted and unclear, we believe Riebe contends that: (1) the trial court's admission of Lewis' testimony about the average carpenter's employment was in error; (2) the trial court should have granted Riebe's motion for directed verdict on the issue of lost wages; and (3) the trial court should have given Riebe's requested jury instruction. We find no merit in these arguments.

With regard to Lewis' testimony, the question of whether Lewis was qualified to give an opinion about the employability of the average carpenter was a determination within the discretion of the trial court, and we must uphold the trial court's decision unless it was clearly erroneous or an abuse of discretion and prejudice resulted. *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982); *Tanner Cos. v. Land Department,* 142 Ariz. 183, 195, 688 P.2d 1075, 1087 (App.1984); *Groener v. Briehl,* 135 Ariz. 395, 398, 661 P.2d 659, 662 (App. 1983). Under Rule 701, Arizona Rules of Evidence, a lay witness' opinion is admissible if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Lewis had approximately 8 years of carpentry experience and testified that he was familiar with the job market for carpenters in and around Bullhead City. In addition, the amount of Lewis' lost wages was a fact in issue. Therefore, we do not believe that the trial court abused its discretion.

Riebe moved for a directed verdict on the issue of lost wages because Lewis' opinion testimony was contradictory to Lewis' own experience and therefore the evidence concerning lost income "was pure speculation and conjecture." Riebe cites no authority for the proposition that it was entitled to a directed verdict because of the "speculative" nature of the lost wages damages.

■ Past and future lost wages are an appropriate measure of damages under Arizona law. *See Wendelken v. Superior Court,* 137 Ariz. 455, 458, 671 P.2d 896, 899 (1983); *Recommended Arizona Jury Instructions (RAJI),* Negligence 10. Once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery. *Broadway Realty & Trust, Inc. v. Gould,* 136 Ariz. 236, 238, 665 P.2d 580, 582 (App.1983), *citing Nelson v. Cail,* 120 Ariz. 64, 67, 583 P.2d 1384, 1387 (App.1978). A directed verdict is appropriate only when reasonable persons could not differ on the conclusions to be drawn from the evidence. *Robertson v. Sixpence Inns,* 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). Lewis testified about his employment history and his wage history, and he also gave an opinion about the average carpenter's employment prospects. There was sufficient evidence from which the jury could determine Lewis' lost wages, and the trial court did not err when it denied Riebe's motion for a directed verdict on the issue of lost wages.

■ Finally, Riebe argues that the trial court should have given Riebe's proffered jury instruction 31. This instruction stated:

You are instructed that in making an award for future damages, if any, you may not base an award upon mere possibilities. Before you may award future damages, you must first find that the damages are reasonably probable to occur. And you must further find, as to such items of damages, that the amount of such future damages has been established with reasonable probability. Lacking this degree of proof, your award may not include these items.

As support for this instruction, Riebe cites *Griffen v. Stevenson,* 1 Ariz.App. 311, 402 P.2d 432 (1965), and *Town & Country Sec. Co. v. Place,* 79 Ariz. 122, 285 P.2d 165 (1955). We find nothing in *Town & Country* relevant to this case, and we find *Griffen* to be distinguishable. *Griffen* states:

Damages for future medical expenses and future loss of earnings in connection with a specific surgical procedure may be recovered where the evidence supports a finding that it is reasonably probable or certain *that such surgery* will be performed in the future, and where the amount of such future damages has been established with reasonable certainty.

*Griffen,* 1 Ariz.App. at 312, 402 P.2d at 433 (emphasis added). Therefore, *Griffen* is distinguishable from this case because *Griffen* held that "there [was] not legally sufficient evidence to permit the jury to be instructed as to future medical expenses and loss of wages necessitated by such operation for the reason [*the operation* was] highly speculative and conjectural." 1 Ariz.App. at 315, 402 P.2d at 436 (emphasis added).

Even assuming, *arguendo,* that *Griffen* stands for the proposition that the amount of future lost wages must be established with reasonable certainty, the trial court's refusal to give Riebe's proposed instruction does not constitute reversible error. A requested instruction need not be given if the concept of the requested instruction is adequately conveyed by another given instruction. *Brierley v. Anaconda Co.,* 111 Ariz. 8, 12, 522 P.2d 1085, 1089 (1974); *Bell v. Maricopa Medical Center,* 157 Ariz. 192, 196, 755 P.2d 1180, 1184 (App.1988). The trial court gave the following *RAJI* instructions:

If you find that defendant is liable to plaintiff, you must then decide the full amount of money that will reasonably and fairly compensate the plaintiff for each of the following elements of damages *proved by the evidence* to have resulted from the defendant's fault:

(1) The nature, extent and duration of the injury;

(2) The pain, discomfort, suffering, disfigurement, disability, and anxiety experienced and *reasonably probable* to be experienced in the future as a result of the injury;

(3) Reasonable expenses of necessary medical care, treatment, and services rendered and *reasonably probable* to be incurred in the future;

(4) Earnings which are lost by the plaintiff to date and any decrease in earning power or capacity by the plaintiff in the future.

*RAJI*, Negligence 10, Measure of Damages (emphasis added).

The plaintiff has the burden of *proving* that the defendant was negligent; that the plaintiff was injured; that the defendant's negligence was a cause of the injury to the plaintiff; and *plaintiff's damages.*

*RAJI*, Negligence 9, Parties Having Burden of Proof (emphasis added).

Burden of proof means burden of persuasion. A party who has the burden of proof must persuade you by the evidence that his or her claim is *more probably true than not true.*

In other words, the evidence supporting the propositions which a party has the burden of proving *must outweigh the evidence opposed to it.*

*RAJI*, Standard (Civil) Instruction 9, Meaning of Burden of Proof (emphasis added). Considering these instructions as a whole, *see Adroit Supply Co. v. Electric Mut. Liab. Ins. Co.*, 112 Ariz. 385, 390, 542 P.2d 810, 815 (1975), we believe that the given instructions adequately informed the jury about the appropriate burden of proof regarding lost wages. The trial court's refusal of defendant's requested cautionary instruction to the jury not to award damages on the basis of mere possibility was not error. *Hirsh v. Manley*, 81 Ariz. 94, 101, 300 P.2d 588, 593 (1956).

## CONCLUSION

We hold that Riebe owed a duty to Lewis to exercise reasonable care in providing a safe work site. We further hold that the scope of Riebe's duty extended to areas over which it retained control. Finally, we hold that the question of retained control was appropriately submitted to the jury and that the jury's determination that Riebe negligently exercised its retained control over Garges' work is supported by the record.

In addition, we believe that the trial court appropriately submitted the case to the jury under the theory of comparative negligence, appropriately admitted evidence of Lewis' lost wages, and appropriately instructed the jury regarding lost wages. Therefore, the opinion of the court of appeals is vacated, the judgment of the trial court is affirmed, and this case is remanded to the trial court with instructions to reinstate the judgment in favor of Lewis.

FELDMAN, C.J., MOELLER, V.C.J., and CAMERON (Retired) and GORDON (Retired), JJ., concur.